Com., Appel.ant, *v.* Westinghouse Air Brake Co.

Com. *v.* Westinghouse Air Brake Co., Appellant.

*Manufacturing corporations—Taxation—Apportionment.*

So much of the capital stock of an exclusively manufacturing corpora-
tion as is invested in other property than its manufacturing business, is
subject to taxation under the act of June 1, 1889.

*Capital stock invested in shares of other companies.*

A corporation exclusively engaged in a manufacturing business is not
exempt from taxation upon that portion of its capital stock which is in-
vested in the securities of other corporations.

*Capital stock invested in workmen's houses.*

An exclusively manufacturing corporation is not exempt from taxation
upon so much of its capital stock as is invested in houses built for its work-
men, where the necessity for the houses was brought about by the com-
pany.

*Taxation—Patent right.*

The portion of the capital stock of a Pennsylvania corporation invested.
in an assignment or a grant of a patent right cannot be taxed by this state.

Argued May 30, 1892.   Appeals, Nos. 14 and 16, May T.,
1892, by plaintiff and defendant, from judgment of C. P. Dau-
phin Co., March T., 1892, No. 180, on trial by court without
jury.   Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS,
McCOLLUM, MITCHELL and HEYDRICK, JJ.

Appeal by defendant from tax settlement.

The case was tried without a jury under the act of 1874.
The facts were found by the court as follows, in an opinion
by McPHERSON, J.:

"1. The defendant is a corporation of this .commonwealth,
chartered originally under the act of July 18, 1863 (P. L. of
1864, p. 1102), and its supplements, for the purpose of 'the
purchase and sale of a patent granted by the United States
for railway brakes and of rights and licenses under said patent,
and for the manufacture and sale of patent railway brakes, air-
pumps, reservoirs, appurtenance,' etc.   The defendant did not
sell said patent or any rights or licenses thereunder, but en-
gaged in the manufacture and sale of railway brakes known as
the Westinghouse air brakes, covered by said patent, and was
engaged exclusively in the manufacture of said brakes, until
1885, in which year the defendant accepted the provisions of

the constitution of 1873 and of the general corporation act of 1874. The certificate which it filed in the office of the secretary of the commonwealth upon Nov. 2, 1885, and which was duly approved by the governor, is made a part of this finding. It contains, inter alia, the following resolution:

" ' *Resolved*, That in accordance with the provisions of the act of April 29, 1874, and its supplements, the Westinghouse Air Brake Company accepted the provisions of said act entitled " An act to provide for the incorporation and regulation of certain corporations," and its several supplements, for the purpose of acquiring all the privileges, immunities and franchises of corporations of the second class for manufacturing purposes.'

" The defendant has not at any time been engaged in any other business than that of manufacturing brakes as aforesaid, and during all of the year now in question it was, and still is, exclusively engaged in said business of manufacturing. The defendant is not engaged in the brewing of spirituous or malt liquors, and does not enjoy and exercise the right of eminent domain.

" 2. The original patent above mentioned has expired, but other patents upon the said subject have been acquired by the defendant from time to time and are now held by it under assignments duly recorded in the patent office at Washington. These patents are owned absolutely by the company, the whole interest being vested in it not subject to any royalty, license fee, charge or reservation whatsoever. The defendant did not acquire with these patents any tangible property or the use of any tangible property, but merely the incorporeal right in and to said patents granted by the government of the United States. All patented articles covered by said patent are manufactured by the defendant itself and are not hired or leased from any other person or corporation whatsoever; and all the tangible property of every kind and description owned by the company or in which it·has any interest is included in the other items, of which a valuation is given below.

" 3. During the tax year in question the defendant had invested in said patents the sum of $1,525,000. They were indispensably necessary to the manufacturing business of the company; without them it could not lawfully manufacture and sell the railway brakes whose manufacture and sale con-

stitutes its only business.   The defendant was not and never
has been engaged in the business of licensing other corpora-
tions or persons to operate under said patents, but is now and
always has been the sole manufacturer of the articles covered
thereby.

"4. The buildings, machinery and appliances used by the
defendant in its business are situated at Wilmerding, in the
county of Allegheny, where the defendant employs about
twelve hundred men.   Its business was originally conducted
in the city of Allegheny, but a few years ago the company
decided to remove, and did remove its manufacturing plant
to Wilmerding, where at that time there were no accommoda-
tions for its workmen, for whose use the defendant thereupon
erected certain houses, of which the value is given below.
The erection of those houses was necessary to enable the com-
pany to secure and retain labor to carry on its business.

"5. During the tax year of 1889 the defendant had a capital
stock of $4,973,550, upon which it declared dividends amount-
ing to 16 per cent.   During the said year the actual value of
the entire property of the company was $7,171,202.08, made
up as follows : Manufacturing plant, including buildings, ma-
chinery, etc., $4,022,242.84 ; shares of stock in sundry corpora-
tions, some of them received in exchange for its manufactured
products, $365,077.94 ; shares in the capital stock of the West-
inghouse Air Brake Company, Limited, a limited partnership
association existing under the laws of England and doing bus-
iness in that country, $1,077,800 ; houses built for the use of
the company's workmen at Wilmerding, $181,081.30, and pat-
ents granted by the United States as above referred to,
$1,525,000.

"Several questions arise upon these facts.   The defendant
is a corporation organized exclusively for manufacturing pur-
poses, and actually carrying on manufacturing within the state,
and under section twenty of the act of 1885, which was in
force during a portion of the period covered by this settlement,
it was entitled to an apportionment of the tax upon its capital
stock.   This is settled by several decisions to which we need
not refer.   During the remainder of the year the act of 1889
was in force and we are now to decide whether under this
act the same custom of apportionment is to be applied.   This

point was not considered or ruled in Com. v. William Mann Co., No. 385, Jan. Term, 1892. In that case we decided that ' a corporation which actually does two kinds of business, only one of which is manufacturing, cannot in any natural sense of the words be described as organized exclusively for manufacturing purposes ; ' and that section twenty-one of the act of 1889 ' taxes the whole capital stock of corporations which, during the given tax year, have carried on two or more businesses, only one of which is manufacturing. In this case apportionment as heretofore allowed is forbidden.' But this leaves untouched the question now presented, namely, whether the whole capital stock of a corporation which is organized exclusively for manufacturing purposes—a corporation which does not carry on two or more businesses, of which only one is manufacturing—is to be taxed simply because a portion of it is invested in property, real or personal, which is not used in its manufacturing business. For example : If the corporation has a surplus beyond the needs of its manufacturing business and invests it, not in carrying on some other business, but in income-producing property, does this investment expose the whole capital stock to taxation ? Or is the tax to be apportioned according to long established custom, and only so much of the capital stock to be taxed as is thus invested ? We find nothing in the act of 1889 which forbids us to apportion in such a case. Indeed, justice to the Commonwealth as well as to the corporation requires that apportionment be made. After the corporation and its business have been examined and both have been found to be exclusively manufacturing, the strict letter of the law would exempt its whole capital stock, although a portion of it might be otherwise invested than in its manufacturing business. But, as was said of section twenty of the act of 1885 in Com. v. Lack. I. & C. Co., 129 Pa. 356, so it may also be said of section twenty-one of act of 1889, that ' it was intended to operate simply on capital employed in manufacturing, the purpose being to free such capital from the burden believed to be hampering our own industries in the struggle for a market. It was hardly intended to relieve from taxation capital, although belonging to manufacturing companies, which was not actually used in manufacturing but in-

vested in interest-bearing securities and in unnecessary real estate.'

" Looking at the act therefore from the point of view of the Commonwealth, we think the surplus in the case supposed— or, speaking more generally, so much of the capital stock of an exclusively manufacturing company as is invested in other property than its manufacturing business—may justly be taxed as is the capital stock of other corporations not exempt.

" And the same result is reached, if the act is looked at from the corporation's point of view. If it is an exclusively manufacturing corporation, it is within the protection of the statute, so far at least as the capital employed in manufacturing is concerned, and this protection ought not to be withdrawn because the corporation has been prosperous (its prosperity being the very object of the exemption), and has accumulated a surplus beyond its immediate needs, or because it does not continuously employ its whole capital in its manufacturing business. Unless apportionment in such case is permitted, the act of 1889 will impose a penalty on business thrift and energy, and instead of encouraging manufacturing corporations will lay a burden upon success. Such a construction would do violence to the spirit and policy of the act, and fortunately is not required by any provision to be found therein.

" Following, therefore, the well established custom of apportionment (Com. v. Standard Oil Co., 101 Pa. 146–7 ; Com. v. Railroad Co., 29 W. N. 149 ; Com. v. Atlantic Refining Co., 2 Pa. C. C. 65), we hold that in the case before us the defendant is not taxed by the act of 1889 upon the capital invested in its manufacturing business, but is taxed thereby upon so much of its capital as is invested in the property about to be specified.

" Part of this property is certain shares of stock in other corporations, above referred to in paragraph five. Some of them, it is said, were taken in exchange for the manufactured products of the defendant, and this would raise a question requiring consideration if the fact was sufficiently proved, but no details are furnished and we cannot say with any certainty how much of its capital was thus invested. It is the duty of the defendant to establish its claim for exemption, and as the evidence upon this point comes short of what is necessary we

must hold that the question cannot now be decided. As to the shares of stock in the Westinghouse Air Brake Company, Limited, we hold for reasons heretofore given in Com. v. United Gas Imp. Co., No. 26, January Term, 1892,* that the defendant is taxable.

---

* The opinion in Com. v. U. Gas Imp. Co., No. 26, Jan. T., 1892, was as follows:

" The seventh specification of appeal raises the question, whether so much of the defendant's capital stock as is invested in and represents shares in other Pennsylvania corporations, which are subject to and in their own names pay a tax upon their capital stock, can be taxed in this proceeding. It is argued that to tax now this part of the defendant's capital stock would be double taxation, and in support of that position we are referred to Pennsylvania Co., etc., v. Com., 22 W. N. 340. It is no doubt true that some language in that case apparently supports the position now taken; but we do not think it was the intention of the Supreme Court to overrule the well settled doctrine announced in Lycoming Co. v. Gamble, 47 Pa. 106, and Whitesell v. Northampton Co., 49 Pa. 526, that ' the laws have made a plain distinction between the capital stock of a corporation as a whole in the hands of the corporation, and the individual shares of the stockholder himself in his own hands.' And we are the more inclined to this belief, because the same learned justice who wrote the opinion in 22 Weekly Notes also wrote the opinion in Com. v. Standard Oil Co., 101 Pa., and there uses this language, on page 148 : ' That the capital stock of a corporation is a different thing from shares of stock appears from Lycoming Co. v. Gamble, 11 Wright, 110. The capital stock represents the property and assets of the company, which may consist in whole or in part of real estate. The certificates or shares of stock are the evidence of an interest which the holder has in the corporation, and it is well settled that this interest is personal property . . . . and as such follows the person of the owner : McKeen v. Co. of Northampton, 13 Wright, 519.' When therefore it was said, in the Penna. Co.'s case, that ' The fact remains, however, that no intent is apparent in our legislation upon this subject, treating the different statutes as a scheme of taxation to tax both the capital stock and the shares in the hands of the shareholders ; such taxation, notwithstanding the subtle distinction of the court below, would be substantially double taxation,' there could have been no purpose to lay down as a general proposition that the very distinction ought to be condemned as ' subtle ' which the court itself had drawn only a few years before. What was condemned, evidently, was merely the particular application of this distinction which the court below had made ; and the case therefore seems only intended as an authority upon its own facts. We think this appears also from Com. v. N. Y. etc. Co., 29 W. N. 151, [s. c. 145 Pa. 38,] where it is said (adopting the language of the court below) : Receipts for tolls and receipts for transportation ' are distinct subjects of taxation and not

" With regard to the capital invested in the house and lots at Wilmerding, we are of opinion that the question is in effect

---

the same subject, are taxed in the hands of distinct and separate taxpayers, and therefore the taxation is not double. In Penna. Co. etc. v. Com., 22 W. N. 340, it was held to be double taxation to tax the capital stock of a corporation, and also the shares in the hands of individual stockholders; but this result was reached either by considering the capital stock and the shares as the same subject, or by considering the corporation and the collective shareholders as the same person.' The plain inference from this quotation is that in the Penna. Co.'s case the court considered that the acts of 1879 and 1885 practically treated the capital stock and the shares as the same subject, and therefore held that to tax it twice by the same scheme of taxation would require clearer legislative language than was to be found in either act. Thus understood, the case is not at all in conflict with the doctrine of Lycoming Co. v. Gamble; but it has been erroneously regarded as stating a general proposition, instead of dealing with a special situation, and has therefore caused a well known distinction, and one which it is important to maintain, to be looked upon as unsettled and uncertain.

" In addition to what has just been said, we may add that Judge SIMONTON has recently and satisfactorily discussed the particular point now before us in Com. v. Lehigh Coal & N. Co., No. 444, Sept. T., 1891, and has clearly shown that it is not decided by the Penna. Co.'s case, even as that decision has been misunderstood. We can add nothing to his argument and desire to adopt his opinion as our own; but we wish also to put the Penna. Co.'s case in what we believe to be the proper light, and thus to be free in the future from needless complexities and embarrassments which have so plentifully arisen before the accounting officers and in this court from the supposed new departure. The defendant's seventh specification of appeal must be overruled."

The opinion in Com. v. Lehigh Coal & N. Co., No. 444, Sept. T., 1891, was as follows, by SIMONTON, P. J.:

" The ground of defendant's objection is that to impose the tax on its capital stock, when the corporations whose shares it holds have paid the tax on their capital stock, represented in part by these shares, would be double taxation, which it contends is illegal.

" The expression double or duplicate taxation may be used in a wider or more restricted sense, and it therefore becomes important to understand distinctly the idea it is intended to convey, when used by ourselves or others. Probably all the authorities would agree with Judge Cooley in saying (Cooley's Taxation, 2d ed. 225): ' There is a sense, however, in which duplicate taxation may be understood, and which we think is the proper sense, which would render it wholly inadmissible under any constitution requiring equality or uniformity in taxation. By duplicate taxation in this sense is understood the requirements that one person, or any subject of taxation, shall directly contribute twice to the same burden,

decided by Com. v. Mahoning Rolling Mill Co., 129 Pa. 360, and
Com. v. Lackawanna I. & C. Co., Ib. 346.   The necessity for the

---

while other subjects of taxation, belonging to the same class, are required
to contribute but once ; ' and (p. 227) 'it is a fundamental maxim in tax-
ation that the same property shall not be subject to a double tax payable
by the same party, either directly or indirectly ; and where it is once de-
cided that any kind or class of property is liable to be taxed under one
provision of the statutes, it has been held to follow, as a legal conclusion,
that the legislature could not have intended that that same property should
be subject to another tax, though there may be general words in the law
which would seem to imply that it may be taxed a second time.'

"But Judge Cooley also says (p. 231) : 'A tax on the shares of stock-
holders in a corporation is a different thing from a tax on the corporation
itself or its stock, and may be laid irrespective of any taxation of the cor-
poration, when no contract relations forbid,' for which proposition he
cites many authorities, and among them Lycoming Co. v. Gamble, 47 Pa.
106, and Weitzel v. Northampton County, 49 Pa. 526.   In the second of
these cases AGNEW, C. J., referring to the Gamble Case, says: "In an
elaborate opinion of our brother THOMPSON, the same conclusion was
stated which had before been reached, to wit, that the shares of stock held
by a stockholder in corporations, foreign or domestic, are taxable to him
personally for county as well as for state purposes; and that the laws
have made a plain distinction between the capital stock of a corporation,
as a whole in the hands of the corporation, and the individual shares of
the stockholder in his own hands.'

"Later decisions, however, seem to have modified the doctrine of these
cases.   Thus in Pennsylvania Company for Insurance on Lives v. Com-
monwealth, 22 W. N. 340, in which the court below followed them, and
adopted the distinction stated by Justice THOMPSON in the Gamble case
that 'shares of stock and capital stock of a corporation are distinct and
different things, obviously, and we think the distinction is plain in the
act;' the Supreme Court speaking by Chief Justice PAXSON, of the taxa-
tion of the shares of stock in the hands of the stockholder and the capital
stock against the corporation, said: 'Such taxation, notwithstanding the
subtle distinction of the court below, would be substantially double taxa-
tion.   Conceding the power of the legislature to tax in this manner, its
exercise is never to be presumed.   The intent to impose double taxation
must be clearly expressed.'   A re-argument was afterwards ordered in
this case which however did not take place, the case having been com-
promised and settled.   This case was decided in 1888, and afterwards in
the act of June 1, 1889, section one, the legislature declared that the tax
thereby imposed should not apply to 'shares of stock in any corporation
or limited partnership liable to the capital stock imposed by the twenty-
first section of this act or relieved from the payment of tax on capital
stock by said section.'   But this exemption it must be noted does not reach
and is therefore not decisive of the point in the present case.   For it is only

erection of these houses was brought about by the defendant itself. For satisfactory business reasons, it left the city of Alle-

---

the shares of stock in a corporation which pays—or is exempt from—tax upon its capital stock which are exempted, whereas here the corporation defendant claims exemption on part of its capital stock because the capital stock of another corporation is taxed, some of whose shares it holds. The argument as we understand it is this : To tax the capital stock of the corporations in question is to tax their shares ; this capital stock has been taxed, therefore the shares are exempt ; but the value of defendant's capital stock is in part made up of the value of these shares, therefore to tax that part would be to tax the shares. In the last analysis the argument amounts to a claim that the capital stock of one corporation is, in part at least, the same thing as the capital stock of the other, so that when one of them is taxed the other is also taxed.

" The capital stock of any corporation and its shares are one step nearer to each other than the capital stock of two different corporations one of which owns shares in the other, and yet they have never been considered identical ; and the cases which decide that they ought not both to be taxed concede that they may be taxed by the legislature if it think proper but that to do so would impose a species of double taxation which we are not to presume was intended where such intention is not clearly expressed.

" We have in one or two cases under special circumstances allowed an exemption of the nature claimed in this case, but we think on mature consideration that the capital stocks of two separate corporations are such essentially different subjects that it would require an express declaration by the legislature to that effect before we could decide that they are not both taxable simply because one of the corporations owns shares in the capital stock of another which has paid its tax.

" It is said in Carbon Iron Co. v. Carbon County, 39 Pa. 251, that the tax on capital stock of corporations is a tax for the value of the corporate franchise. Later cases have decided that it is a tax upon the property represented by the capital stock : Commonwealth v. Standard Oil Co., 101 Pa. 144, and cases cited. But we do not understand that there is any conflict between the cases. It is a tax upon the property of the corporation, but the value of its corporate franchises is part of its property, and often a very valuable part. And the corporate franchises of two separate corporations are certainly separate and distinct things belonging to separate and distinct persons.

" After most careful consideration we are not able to see how it can be said, with any reasonable approach to accuracy in the use of language, that the taxation of defendant's capital stock, after the corporations in which it owns shares have paid tax on their capital stock, would be duplicate taxation. There is not that identity of both subject and person taxed which as is well said by Judge McPherson in Commonwealth v. N. Y., L. E. & W. R. R. Co., 29 W. N. 149, [s. c. 145 Pa. 38,] in an opinion adopted by the Supreme Court, must exist before the taxation becomes

gheny and moved its manufacturing plant into the country where there were no accommodations for its workmen.  Having itself created this situation, we think it cannot properly urge that those houses were absolutely necessary.  The case differs from that of a coal mine or similar operation where the workmen must be brought to the particular spot.  Here there is no such compulsion, and following the reasoning of the cases just cited we must pronounce against this claim for exemption.

" In Com. v. Westinghouse Electric and Manufacturing Co., No. 282, March Term, 1892, we have considered the remaining question, namely, the taxability of the defendant's capital stock invested in the patents above described, and we need not repeat the argument which may there be found.

" Our conclusions are as follows :

" 1. The defendant is a corporation organized exclusively for manufacturing purposes and actually carrying on manufacturing within the state.

" 2. So much of its capital stock therefore as is invested in its manufacturing business is exempt from taxation under the acts of 1885 and 1889.

" 3. It is not exempt from taxation upon that portion of its capital stock which is invested in the securities of other corporations.

" 4. It is not exempt from taxation upon so much of its capital stock as is invested in the houses built for its workmen at Wilmerding.

" 5. It is exempt from taxation upon so much of its capital stock as is invested in the patents above described.

---

obnoxious to the charge of being double in any objectionable sense.  At most the taxation of both would result in the kind of double taxation which Judge COULTER said, in Philadelphia Saving Fund Society v. Yard, 9 Pa. 359, has obtained and must prevail in the exigencies of the commonwealth.  It exists in the case of ground rents, where the land itself and the reditum issuing from it, are taxed.  In the tax upon a mortgage, to the whole value of the land itself.  And so, where A. borrows money on mortgage, and loans it to C. on bond, who loans a part of it to D., it is taxed in the current of each actual employment.  In the complexity and involutions of business, a dollar is employed many times a day, and in each actual employment represents the property, business or the person of him who uses it.  And in cases of this kind, it is the usufruct and not the actual or identical money that is taxed."

" The Commonwealth is entitled to recover as follows :

| | |
|---|---|
| Principal, . . . . . . | $9,010 31 |
| Interest at twelve per cent from April 8, 1892, to April 28, . . . . | 60 07 |
| Attorney general's commission, . . . | 450 50 |
| | |
| Total, . . . . . | $9,520 88 |

" For which amount we direct judgment to be entered if exceptions are not filed according to law."

The Commonwealth excepted, (1) to first, second and third findings of fact, and (2) to the first, second and fifth conclusions of law; quoting in its exceptions the findings and conclusions; and (3) in not directing judgment for the Commonwealth for the full amount of the claim.

Defendant excepted inter alia, (7, 8) to the third and fourth conclusions of law, quoting them.

All of the exceptions were dismissed, and judgment was entered in accordance with the opinion.

*Errors assigned* by the Commonwealth were (1–3) dismissal of its exceptions, quoting them.

*Errors assigned* by defendant were, inter alia, (5, 6) dismissal of its exceptions.

*Jas. A. Stranahan,* deputy attorney general, and *W. U. Hensel,* attorney general, for Commonwealth.

*M. E. Olmsted,* for Westinghouse Air Brake Co., cited as to tax on capital stock invested in foreign partnership association : Small's Est., 11 Pa. C. C. 1 [in s. c. 151 Pa. 1] ; Com. v. Standard Oil Co., 101 Pa. 119 ; Pitts. F. W. & C. Ry. v. Com., 74 Pa. 83 ; Com. v. Am. Dredging Co., 122 Pa. 386.

PER CURIAM, October 3, 1892.

The judgment is affirmed upon the opinion of the learned judge of the court below.