Chrysel Corporation *v.* Commonwealth.

Argued September 6, 1972, before President Judge
BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKIN-
SON, JR., MENCER and ROGERS. Judge BLATT did not
participate.

*Lewis H. Markowitz,* with him *Markowitz, Kagen &
Griffith,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for
appellee.

OPINION BY JUDGE MENCER, October 10, 1972:

Chrysel Corporation (Chrysel) is a Pennsylvania
corporation, a wholly owned subsidiary of Triumph
Hosiery Mills, Inc. (Triumph), also a Pennsylvania
corporation, which was organized for and engaged in
the manufacture of ladies' hosiery and knitwear ap-
parel. Prior to 1966, Chrysel manufactured ladies'
hosiery and knitwear apparel in Pennsylvania and sold
the manufactured products to Triumph, its parent cor-
poration. By 1967, Chrysel had ceased all manufactur-

ing operations and had leased to Triumph its building in York, Pennsylvania, where it had formerly engaged in manufacturing. Triumph, during the year 1967, continued manufacturing activities that were formerly carried on by Chrysel in the building which it had leased from Chrysel.

Prior to the year 1967, Triumph owed Chrysel money, and this was shown on Chrysel's books for 1967 as an asset and labeled "advance." The monies owed to Chrysel by Triumph were for goods sold by Chrysel to Triumph in previous years. Instead of paying the monies owed to Chrysel, the parent corporation purchased equipment with available funds and used this equipment to manufacture ladies' hosiery and knitwear apparel.

Chrysel timely filed its capital stock tax return for the year ending December 31, 1967. Chrysel computed its tax on the basis of a sworn valuation of its capital stock of $35,000 and a taxable apportion fraction of 10,573/103,631. The Commonwealth settled Chrysel's tax by increasing the valuation of the capital stock to $45,000 and increasing the numerator of the taxable apportion fraction by 48,431, which made the fraction 59,004/103,631.

The increase of 48,431 in the numerator was due to the disallowance by the Commonwealth of (1) the amount owed by Triumph to Chrysel and (2) the average amount of accrued interest receivable on the "advance." The Commonwealth allowed Chrysel the manufacturing exemption for the value of the building and land owned by Chrysel and leased to Triumph. This allowance was in accord with the holding of *Commonwealth v. Jeca Corp.*, 81 Dauphin 36 (1963).

Chrysel timely filed a petition for resettlement and the petition was refused on February 10, 1969. A petition for review was filed by Chrysel with the Board

of Finance and Revenue and this petition was refused on September 25, 1969. Chrysel timely took an appeal to the Court of Common Pleas of Dauphin County, and subsequently this appeal was transferred to the Commonwealth Court, pursuant to the provisions of Section 13(a) of the Act of January 6, 1970, P. L. (1969) 434, 17 P.S. §211.13(a).

A jury trial has been waived in accordance with the provisions of Section 1 of the Act of April 22, 1874, P. L. 109, 12 P.S. §688. The parties have entered into a stipulation of facts. We adopt the stipulation as our findings of fact and incorporate the same herein by reference. In the course of this opinion we will discuss those facts which, in our judgment, are essential to the disposition of this case.

## The Valuation of Chrysel's Capital Stock

In *Commonwealth v. Pomeroy's Inc.*, 344 Pa. 538, 541, 26 A. 2d 197, 199 (1942), it was stated: "Valuation for capital stock tax purposes is not just a matter of figures and accounting; judgment as to value is required. We repeat what was said in Com. v. Penna. R. R. Co., 297 Pa. 308, 317, 147 A. 242, 'the value of capital stock is not a matter of strict formula but a matter of judgment. "Common sense and practical every-day business experience are the best guides for those entrusted with the administration of tax laws. Taxation is a practical and not a scientific problem." ' "

Here we are concerned with the tax year of 1967, and the applicable statute is the Act of June 1, 1889, P. L. 420, §21, as amended, 72 P.S. §1871, which levied a tax upon the taxable value of certain domestic corporations' capital stock and provided that the actual value of said stock should be ascertained in the manner prescribed in the twentieth section of the Act, 72 P.S. §1902, which provided that the capital stock should

be valued and appraised ". . . at its actual value in cash as it existed at the close of the year for which report is made; taking into consideration, first, the average which said stock sold for during the year; and second, the price or value indicated or measured by net earnings or by the amount of profit made and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and third, the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets, and of the value of its good will and franchises and privileges, as indicated by the material results of their exercise, taking also into consideration the amount of its indebtedness."

The different statutory factors may receive varying weight as the situation of each case occasions. *Commonwealth v. Rosenbloom Finance Corporation*, 91 Dauphin 359 (1969). Here the average total assets of Chrysel for the year 1967 was $103,631, with a book equity of $65,564 and current earnings of $7,715. Considering the liquidity feature of Chrysel and its current earnings, we can only conclude that the Commonwealth properly determined that the actual value of the capital stock of Chrysel, on December 31, 1967, was $45,000. *See The Philadelphia Eagles, Inc. v. Department of Revenue*, 4 Pa. Commonwealth Ct. 318 (1972).

## Applicability of Manufacturing Exemption to Advance

We first take note that an exemption from taxation is strictly construed against the one claiming the exemption. Section 58(5) of the Act of May 28, 1937, P. L. 1019, 46 P.S. §558(5).

Section 21 of the Act of June 1, 1889, P. L. 420, as amended by Section 1 of the Act of December 29, 1967, P. L. 896, provides for a manufacturing exemption as

to taxation of the capital stock of certain corporations, and its pertinent part reads as follows: "(a) . . . [T]he provisions of this section shall not apply to the taxation of the capital stock of corporations, limited partnerships and joint-stock associations organized for manufacturing . . . purposes, which is invested in and actually and exclusively employed in carrying on manufacturing . . . within the State . . ., but every corporation, limited partnership or joint-stock association organized for the purpose of manufacturing . . . shall pay the State tax herein provided, upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the manufacturing . . . business . . ., it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the manufacturing . . . plant and business."

Chrysel was admittedly organized for the purpose of manufacturing and was in fact previous to 1967 so engaged. Here the question is whether an "advance" on Chrysel's books represents capital actually and exclusively employed in manufacturing. We do not think so and consider that the holding of *Commonwealth v. Prudential Industries, Inc.,* 80 Dauphin 381 (1963), controls this case. In *Prudential* it was held that assets, consisting of advances to, and accounts receivable from, a wholly owned subsidiary, were not assets invested in and actually and exclusively employed in carrying on manufacturing and therefore not exempt from the capital stock tax. This was true even though the subsidiary corporation admittedly used the funds advanced in connection with the subsidiary corporation's manufacturing operation.

The Court, in *Prudential,* stated as follows:

"We have held that the following assets of a manufacturing corporation did not qualify for the manufac-

turing exemption: bank accounts greater than are reasonably necessary to carry on the manufacturing business, Commonwealth v. The Curtis Publishing Company, 15 Dauphin 122 (1912) affirmed in 237 Pa. 333; Commonwealth v. Apex Hosiery Company, 40 Dauphin 399 (1935); cash surrender value of life insurance policies taken out by a corporation on the life of its President, Commonwealth v. Steel Heddle Manufacturing Company, 41 Dauphin 315 (1935); accumulation of a supply of raw material far beyond the needs for manufacturing purposes within the limits of the tax year, Commonwealth v. The Custer City Chemical Company, 16 Dauphin 46 (1913); Commonwealth v. New York and Pennsylvania Co., 16 Dauphin 51 (1913); covenant bonds of another domestic corporation held by a manufacturing corporation, Commonwealth v. Jarecki Manufacturing Company, 204 Pa. 36 (1902) reversing 5 Dauphin 154; funds not needed in a manufacturing company, which have been temporarily withdrawn from use with the expectation of employing the funds at some future time when it may determine to expand its trade, Commonwealth v. Nagle Engine and Boiler Works, 23 Dauphin 235 (1920).

"A similar situation can be found in the line of cases in which the taxpayer claimed exemption for dwelling houses owned and rented by it. These cases include Commonwealth v. Mahoning Rolling Mill Company, 5 Pa. C. C. Rep. 95 (1888); Commonwealth v. Salt Manufacturing Company, 1 Dauphin 97 (1897); Commonwealth v. Westinghouse Air Brake Company, 151 Pa. 276 (1892) and Commonwealth v. Keasbey and Mattison Company, 43 Dauphin 71 (1936). The general ruling of these cases is that the dwelling houses are exempt if necessary to the manufacturing operations of the one claiming the exemption. However, if the necessity for their erection is brought about by the

action of the taxpayer itself, the exemption will not be granted." 80 Dauphin at 385-86.

Since Chrysel had ceased its own manufacturing operations by 1967, the "advance" cannot qualify for the manufacturing exemption as a reasonable reserve of cash or as working capital consisting of current assets under the holdings of *Commonwealth v. Curtis Publishing Company*, 237 Pa. 333, 85 A. 360 (1912) and *Commonwealth v. Dilworth, Porter & Co., Ltd.*, 242 Pa. 194, 88 A. 933 (1913).

Here the facts suggest that the monies owed Chrysel by Triumph were for goods sold by Chrysel to Triumph and were accounts receivable to Chrysel and accounts payable to Triumph. However, the parties to this litigation stipulated that factually the monies owed were an advance. *Black's Law Dictionary* 72 (4th ed. 1951) defines "advance" as: "To pay money or render other value before it is due; to furnish something before an equivalent is received; to loan; to furnish capital in aid of a projected enterprise, in expectation of return from it. (Citation omitted.) To supply beforehand; to furnish on credit or before goods are delivered or work done; to furnish as a part of a stock or fund; to pay money before it is due; to furnish money for a specific purpose understood between the parties, the money or sum equivalent to be returned; furnishing money or goods for others in expectation of reimbursement; money or commodities furnished on credit; a loan, or gift or money advanced to be repaid conditionally; may be equivalent to 'pay.' (Citation omitted.)"

The "advance" was made by Chrysel prior to the taxable year 1967 and, even if the Commonwealth's contention that the "advance" did not represent capital invested and actually and exclusively employed in the manufacturing business of Chrysel is in error, it remains clear that, for the year 1967, there was no such

use of the "advance," since it had been made prior to the taxable year in question here.

Chrysel contends that *Commonwealth v. Jeca Corp., supra,* controls this case. In *Jeca,* a corporation organized for manufacturing purposes acquired real estate upon which there was erected a machine shop and steel fabrication plant, together with necessary machinery and equipment. Jeca leased all of its property to Richmond Machine Company (Richmond) which used the property leased from Jeca exclusively for manufacturing purposes within the Commonwealth of Pennsylvania. Jeca's entire income arose solely from the rental of its property to Richmond. Jeca was allowed the manufacturing exemption although it had never been engaged in manufacturing. The Court held that the requirement that a corporation must be organized for manufacturing purposes to be exempt from the capital stock tax is a fact to be determined by an examination of the articles of incorporation and is not determined from whether or not a corporation is in fact engaged in manufacturing and is not conditioned upon the corporation's having been engaged in manufacturing in the plant that is leased.

We conclude that the instant case can be distinguished from the holding in *Jeca* because here there is no property or asset of Chrysel being used in manufacturing in the taxable year, as contrasted to *Jeca* where it was Jeca's land, buildings, plant, machine and equipment that were being used for manufacturing purposes by the lessee. Chrysel is entitled to payment for goods sold Triumph in previous years, but this account receivable or advance is not an asset being used for manufacturing purposes in the taxable year such as was the property *owned by Jeca* but under lease to Richmond. Therefore, we hold that the "advance" made by Chrysel to Triumph was not actually and exclusively employed

in carrying on manufacturing in Pennsylvania during the year 1967, and it is not therefore entitled to be exempt from the Pennsylvania capital stock tax.

Accordingly, we make the following

### CONCLUSIONS OF LAW

1. Chrysel Corporation, a Pennsylvania corporation, is subject to capital stock tax liability under the Act of June 1, 1889, P. L. 420, as amended, for the year ending December 31, 1967.

2. In appraising the value of the capital stock of Chrysel Corporation, a Pennsylvania corporation, for capital stock tax purposes for the year 1967, the Commonwealth properly and legally valued such capital stock at $45,000.

3. The taxpayer, Chrysel Corporation, a Pennsylvania corporation, has not met its burden of showing that the necessary conditions exist to entitle it to an exemption from capital stock tax on the advance owed to it by Triumph Hosiery Mills, Inc.

4. The Commonwealth properly settled the 1967 capital stock tax of Chrysel Corporation, a Pennsylvania corporation, at $153.73.

5. Judgment should be entered in favor of the Commonwealth and against Chrysel Corporation in the amount of $153.73.

### DECREE NISI

AND NOW, this 10th day of October, 1972, the appeal of Chrysel Corporation is hereby dismissed, and judgment is directed to be entered in favor of the Commonwealth of Pennsylvania and against Chrysel Corporation, in the amount of $153.73, together with interest and costs, according to law, unless exceptions be

378

filed hereto within thirty (30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.