Jubilee Knitting Mills, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

Argued June 6, 1973, before President Judge Bow-
MAN and Judges CRUMLISH, JR., KRAMER, WILKINSON,
JR., MENCER, ROGERS and BLATT.

*Lewis H. Markowitz*, with him *Markowitz, Kagen &
Griffith*, for appellant.

*Eugene J. Anastasio*, Deputy Attorney General, for
appellee.

OPINION BY JUDGE MENCER, August 28, 1973:

Jubilee Knitting Mills, Inc. (Jubilee) is a Pennsyl-
vania corporation, a wholly owned subsidiary of Tri-
umph Hosiery Mills, Inc. (Triumph), also a Pennsyl-
vania corporation, which was organized for and en-
gaged in the manufacture of ladies' hosiery and knit-
wear apparel. From its inception until June 30, 1965,
Jubilee manufactured ladies' seamless hosiery and knit-
wear apparel in Pennsylvania and sold the manufac-
tured products exclusively to Triumph, its parent cor-
poration. Upon the cessation of its manufacturing op-
erations, Jubilee leased all of its equipment to Triumph

which thereafter, and during the year 1967, used the leased equipment to manufacture the same type of hosiery and knitwear which had previously been manufactured by Jubilee.

On June 30, 1965, Triumph was indebted to Jubilee in the sum of $278,775 for goods sold and delivered to Triumph by Jubilee. This indebtedness was reduced to $249,775 by December 31, 1965. The change in the indebtedness represented increases for unpaid equipment rental by Triumph and decreases by cash payments by Triumph. These cash payments by Triumph also included a $30,000 dividend declared by Jubilee which was due and owing to Triumph.

Movement in the indebtedness account resulted in a balance due Jubilee on December 31, 1966 of $253,000; on December 31, 1967, the same amount, and on December 31, 1968, a balance of $361,000. This indebtedness owed by Triumph to Jubilee was not repaid, but money of a comparable amount was used by Triumph to purchase additional equipment which was used in manufacturing by Triumph. Interest on the indebtedness was paid by Triumph to Jubilee.

We are here concerned with Jubilee's capital stock tax return for the year ending December 31, 1967. Jubilee timely filed its return and computed its tax on the basis of a sworn valuation of its capital stock of $500,000 and a taxable apportion fraction of 3,578/809,333.[1] The Commonwealth accepted Jubilee's capital stock valuation but settled Jubilee tax by increasing the numerator of the taxable apportion fraction by 264,874, which made the fraction 268,452/809,333.[2]

The increase of 264,874 in the numerator was due to the disallowance by the Commonwealth of the $253,000 owed by Triumph to Jubilee and $11,784 being the

---

[1] This computation resulted in a tax liability of $13.26.

[2] This computation resulted in a tax liability of $995.09.

average prepayments and accruals applicable.[3] Jubilee timely filed a petition for resettlement and the petition was refused on February 10, 1969. A petition for review was filed by Jubilee with the Board of Finance and Revenue and this petition was refused on September 24, 1969. Jubilee appealed to the Court of Common Pleas of Dauphin County and the appeal was transferred to the Commonwealth Court pursuant to the provisions of Section 13(a) of The Commonwealth Court Act, Act of January 6, 1970, P. L. (1969) 434, 17 P.S. §211.13(a).

A jury trial has been waived in accordance with the provisions of Section 1 of the Act of April 22, 1874, P. L. 109, 12 P.S. §688. The parties have entered into a stipulation of facts. We adopt the stipulation as our findings of fact and incorporate the same herein by reference. In the course of this opinion we will discuss those facts which, in our judgment, are essential to the disposition of this case.

The case of *Chrysel Corporation v. Commonwealth*, 6 Pa. Commonwealth Ct. 368, 295 A. 2d 624 (1972), controls this appeal. Chrysel Corporation (Chrysel) was also a subsidiary corporation of Triumph and, at the time Jubilee went out of the manufacturing business, Chrysel also went out of business. When Chrysel and Jubilee ceased manufacturing, Triumph was indebted to both of them for goods manufactured by them and sold to Triumph. This indebtedness was increased over the years in both instances. In the case of Chrysel, it was increased because of unpaid rental for the plant and in the case of Jubilee for unpaid equipment rental. In both cases the indebtedness owed to the subsidiary

---

[3] An unexplainable mathematical error exists because the total of the two items is incorrect. Since we expect the Commonwealth to adjust this obvious mistake, we will not remand this case for a recomputation of the tax liability.

corporations, Chrysel and Jubilee, by Triumph was not repaid but comparable amounts of money were used by Triumph to purchase additional equipment.

In *Chrysel*, after pointing out that an exemption from taxation is strictly construed against the one claiming the exemption[4] and setting out the applicable statutory authorization for a manufacturing exemption as to taxation of the capital stock of certain corporations,[5] we concluded that *Commonwealth v. Prudential Industries, Inc.*, 80 Dauphin 381 (1963), was controlling.

We have again reviewed the reasoning and holding in *Prudential* and find that it has equal application here. We repeat, with approval, what the Court, in *Prudential*, stated:

"We have held that the following assets of a manufacturing corporation did not qualify for the manufacturing exemption: bank accounts greater than are reasonably necessary to carry on the manufacturing business, Commonwealth v. The Curtis Publishing Company, 15 Dauphin 122 (1912) affirmed in 237 Pa. 333; Commonwealth v. Apex Hosiery Company, 40 Dauphin 399 (1935); cash surrender value of life insurance policies taken out by a corporation on the life of its President, Commonwealth v. Steel Heddle Manufacturing Company, 41 Dauphin 315 (1935); accumulation of a supply of raw material far beyond the needs for manufacturing purposes within the limits of the tax year, Commonwealth v. The Custer City Chemical Company, 16 Dauphin 46 (1913); Commonwealth v. New York and Pennsylvania Co., 16 Dauph. 51 (1913); covenant bonds of another domestic corporation held by a manu-

---

[4] Section 58(5) of the Act of May 28, 1937, P. L. 1019, 46 P.S. §558(5).

[5] Section 21 of the Act of June 1, 1889, P. L. 420, as amended by Section 1 of the Act of December 29, 1967, P. L. 896.

facturing corporation, Commonwealth v. Jarecki Manufacturing Company, 204 Pa. 36 (1902) reversing 5 Dauphin 154; funds not needed in a manufacturing company, which have been temporarily withdrawn from use with the expectation of employing the funds at some future time when it may determine to expand its trade, Commonwealth v. Nagle Engine and Boiler Works, 23 Dauphin 235 (1920).

"A similar situation can be found in the line of cases in which the taxpayer claimed exemption for dwelling houses owned and rented by it. These cases include Commonwealth v. Mahoning Rolling Mill Company, 5 Pa. C. C. Rep. 95 (1888); Commonwealth v. Salt Manufacturing Company, 1 Dauphin 97 (1897); Commonwealth v. Westinghouse Air Brake Company, 151 Pa. 276 (1892) and Commonwealth v. Keasbey and Mattison Company, 43 Dauphin 71 (1936). The general ruling of these cases is that the dwelling houses are exempt if necessary to the manufacturing operations of the one claiming the exemption. However, if the necessity for their erection is brought about by the action of the taxpayer itself, the exemption will not be granted." 80 Dauphin at 385-86.

Likewise, since Jubilee had ceased its own manufacturing operations before 1967, the indebtedness owed to it by Triumph cannot qualify for the manufacturing exemption as a reasonable reserve of cash or as working capital consisting of current assets under the holdings of *Commonwealth v. Curtis Publishing Company,* 237 Pa. 333, 85 A. 360 (1912), and *Commonwealth v. Dilworth, Porter & Co., Ltd.,* 242 Pa. 194, 88 A. 933 (1913).

Here the stipulated facts establish that the indebtedness owed Jubilee by Triumph was almost entirely[6] for

---

[6] $249,775 of the $253,000 indebtedness owing as of December 31, 1966 and December 31, 1967.

goods sold by Jubilee to Triumph. This indebtedness was owed to Jubilee prior to the taxable year 1967 and, even if the Commonwealth's contention that the indebtedness did not represent capital invested and actually and exclusively employed in the manufacturing business of Jubilee is in error, it remains clear that, for the year 1967, there was no such use of the indebtedness, since it had arisen and existed prior to the taxable year in question here.

Jubilee, like Chrysel, is entitled to payment for goods sold Triumph in previous years, but this indebtedness is not an asset being used for manufacturing purposes in the taxable year. Therefore, we must hold that the indebtedness owed to Jubilee by Triumph was not actually and exclusively employed in carrying on manufacturing in Pennsylvania during the year 1967, and it is not therefore entitled to be exempt from the Pennsylvania capital stock tax.

Accordingly, we make the following

### Conclusions of Law

1. Jubilee Knitting Mills, Inc., a Pennsylvania corporation, is subject to capital stock tax liability under the Act of June 1, 1889, P. L. 420, as amended, for the year ending December 31, 1967.

2. The taxpayer, Jubilee Knitting Mills, Inc., a Pennsylvania corporation, has not met its burden of showing that the necessary conditions exist to entitle it to an exemption from capital stock tax on the indebtedness owed to it by Triumph Hosiery Mills, Inc.

3. The Commonwealth properly settled the 1967 capital stock tax of Jubilee Knitting Mills, Inc., a Pennsylvania corporation, at $995.09.

4. Judgment should be entered in favor of the Commonwealth and against Jubilee Knitting Mills, Inc., in the amount of $995.09.

## Decree Nisi

And now, this 28th day of August, 1973, the appeal of Jubilee Knitting Mills, Inc., is hereby dismissed, and judgment is directed to be entered in favor of the Commonwealth of Pennsylvania and against Jubilee Knitting Mills, Inc., in the amount of $995.09, together with interest and costs, according to law, unless exceptions be filed hereto within thirty (30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.