Maxwell Memorial Football Club, Inc., Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

Argued March 3, 1975, before President Judge Bowman and Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt.

*Ivan I. Light*, with him *Anthony S. Minisi*, and *Wolf, Block, Schorr & Solis-Cohen*, for appellant.

*Paul S. Roeder*, Assistant Attorney General, for appellee.

OPINION BY JUDGE KRAMER, April 23, 1975:

This is an appeal from a decision of the Board of Finance and Revenue, dated August 23, 1972, which sustained an order of the Board of Review of the Bureau of Taxes for Education, Department of Revenue, dated February 7, 1972. The Board of Review had refused a "Petition for Refund of Sales Tax" filed by the Maxwell Memorial Football Club, Inc. (Maxwell). The petition alleged, in essence, that Maxwell was exempt from sales tax on its purchases by virtue of status as a "charitable organization." This is a *de novo* appeal, taken pursuant to section 1104 of the Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §1104 (Supp. 1974-1975), and the parties have submitted a stipulation of facts which we adopt as our findings of fact for the purposes of this case. The salient facts are as described below.

FACTS

Maxwell is a Philadelphia-based nonprofit corporation. It was organized in 1935, and all of its activities relate to football, in one way or another. As revealed by the stipulation, Maxwell has two *primary* activities: (1) the conduct (during football seasons) of weekly luncheons, featuring speeches by individuals who are active in some way in scholastic, collegiate or professional football; and, (2) the annual awarding of the "Maxwell Trophy" and the "Bert Bell Trophy," to the year's outstanding collegiate and professional football player, respectively.

On one occasion (June 9, 1970), Maxwell operated a football injury clinic for the benefit of Philadelphia area high school and college players, the purpose of which was to educate the players in ways "to eliminate, reduce and minimize football injuries." Although Maxwell has conducted only one such clinic, it does review each year the need for such clinics. Maxwell has also made one cash contribution of $500 (in 1973) to defray the medical expenses of a high school player who was paralyzed while playing football.

All of Maxwell's funds are derived from members' dues, contributions, and assessments for specific activities (such as luncheons and golf tournaments).

## Discussion

Our scope of review in appeals from the Board of Finance and Revenue is broad, and includes, of course, the power to review for errors of law. *Eastern Diversified Metals Corporation v. Commonwealth,* 6 Pa. Commonwealth Ct. 605, 297 A.2d 167 (1972), *aff'd. per cur.,* 453 Pa. 611 (1973). The sole question presented by this case is whether Maxwell is exempt from the sales tax by virtue of its alleged status as a "charitable organization." Section 204(10) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, 72 P.S. §7204(10) (Supp. 1974-1975) reads, in relevant part, as follows:

> "The tax imposed by section 202 shall not be imposed upon
>
> \* \* \*
>
> "The sale at retail to or use by (1) any charitable organization . . . of tangible personal property or services. . . ." (Footnote omitted.)

The Act does not define "charitable organization," and there are apparently no appellate cases interpreting either this provision or its predecessor sections in prior statutes imposing a sales tax.[1]

---

1. For definitional purposes, we note that *Regulation* 205 of the Bureau of Sales and Use Tax, CCH Pa. Sales and Use Tax

The ultimate source of the charitable exemption is Article VIII, §2(a)(v) of the Pennsylvania Constitution of 1968, which empowers the Legislature to "exempt from taxation". . . "[i]nstitutions of purely public charity." The Legislature is thus *only* permitted to exempt institutions of *purely* public charity, and the statutory language in question cannot constitutionally be interpreted to exempt an organization which is something less than a "pure" public charity. *Board of Christian Education of the Presbyterian Church v. Philadelphia School District,* 171 Pa. Superior Ct. 610, 91 A.2d 372 (1952). The Statutory Construction Act of 1972, 1 Pa. C.S. §1922(3), provides a presumption that the Legislature does not intend to violate the Constitution, and we are compelled to frame our inquiry in terms of whether Maxwell is an "institution of purely public charity." We note that the Statutory Construction Act of 1972, 1 Pa. C.S. §1928 (b)(5), also provides that statutory provisions exempting persons or property from taxation are to be strictly construed, and this is consistent with the narrow view we take of section 204(10) of the Code. *See Jubilee Knitting Mills, Inc. v. Commonwealth of Pennsylvania, Board*

---

Rep., para. 60-246, reads, in relevant part, as follows:

"1. Definitions

"a. Charitable Organization—A charitable organization is a group or body of persons which is created and *which exists for the purpose of* performing a humane service; promoting the good and welfare of the aged, poor, infirm, or distressed; combating juvenile delinquency; or advancing the spiritual, mental, social and physical improvement of young men and women.

\*    \*    \*

"*Mutual benefit or social groups, which are created and which exist primarily for the benefit of their membership, are not 'Charitable Organizations.'* Such groups include BPOE, B'nai B'rith, Knights of Columbus, Eagles and similar organizations. *Such groups are not 'Charitable Organizations,' even though they may perform some service or work which is charitable in nature.*" (Emphasis added.)

*of Finance and Revenue,* 9 Pa. Commonwealth Ct. 602, 309 A.2d 161 (1973) and *Tyger & Karl Complete Water Systems Co., Inc. v. Commonwealth,* 5 Pa. Commonwealth Ct. 154 (1972).

Maxwell's argument begins with the premise that the participation of youth in the sport of football is beneficial, both for the individual participants and for society in general. Maxwell suggests that desirable character traits and physical fitness are fostered in the players themselves, and that juvenile delinquency is reduced. Assuming this to be true, Maxwell reasons that its activities, if good for football, are likewise good for the individuals who play the game and for society. More specifically, Maxwell contends that its primary activity of honoring players "encourages continued participation and interest in the sport" and provides "models of accomplishment and heroes with positive characteristics for other youths to emulate."

We note initially that "[a]lthough . . . a design to achieve objects beneficial to the community is common to all charitable purposes, it does not follow that all such designs are charitable or 'purely public charity.'" *Bower Hill Civic League Appeal,* 207 Pa. Superior Ct. 122, 131, 215 A.2d 305, 309 (1965). Stated another way, it can be said that the mere fact that an organization engages in activities which are in some way oriented toward community improvement (and devoid of the element of private gain) does not render such an organization a "purely public charity" in the legal sense.

Our appellate courts have been frustrated over the years in their attempts to give a precise definition to the term "charity." As Mr. Justice Stern said in *Funk Estate,* 353 Pa. 321, 323, 45 A.2d 67, 69 (1946), "attempts to give to 'charity' a reasonably precise connotation in the law have been generally unsuccessful." *See Hill School Tax Exemption Case,* 370 Pa. 21, 24-25, 87 A.2d 259, 262 (1952). In *Robert Morris College v. Board of Property*

*Assessment, Appeals and Review,* 5 Pa. Commonwealth Ct. 648, 291 A.2d 567 (1972) we discussed the various approaches taken in this area and, to the extent they are helpful, they are equally applicable here.

In the instant case we are troubled not by Maxwell's premise that football is good for the youth of Pennsylvania, but by the lack of a clear nexus between Maxwell's real, on-going, primary activities and the ultimate benefit purportedly conferred either on individuals or society. In short, we have difficulty in seeing a clear cause and effect relationship between the granting of awards and the sponsoring of luncheons on the one hand, and the benefits to youth on the other. We have no trouble, however, understanding the obvious social benefit derived from conducting programs where football is discussed among people who have a strong, personal interest in the sport.

Our difficulty is no doubt caused in part by the fact that football has become such an institutionalized and all-pervasive part of American sports (which is in turn an increasingly important aspect of our lives) that, in the context of sports in general, and football in particular, Maxwell's efforts seem only very remotely significant. We cannot avoid the impression that Maxwell exists primarily not to benefit youth, but to provide an outlet for the personal interests of its members. While it may be true that participation in organized football is a good thing, this fact alone does not entitle Maxwell to avoid paying taxes. Ultimately, we are forced to conclude that the social benefits derived by Maxwell's membership provide the organization's primary reason for existing, and any charitable aspects of its operation have, at best, a very remote effect upon the physical or mental well-being of youth. We do not intend to imply by the approach we have taken in this case that an organization must prove the effectiveness of its efforts before it can qualify for tax exempt status. It would be enough to show that the activities in question are reasonably calculated to directly

achieve a charitable objective. The activities sponsored by Maxwell in the instant case seem directed toward charitable goals in only an incidental way.

The two instances of clearly charitable activity noted above, i.e., the injury clinic and the contribution to the paralyzed boy, while certainly laudable, are simply too isolated and too small a part of Maxwell's overall program to justify a charitable exemption from sales tax on hotel bills, food and drink, photography, trophies, prizes and all of the other items about which Maxwell complains.

As we have pointed out, the mere fact that some benefit might be bestowed on the community from an organization's activity is not sufficient to justify status as a charity. *Bower Hill, supra.* We are compelled to consider the precise *nature* of the organization in question, and, having done so, we conclude that Maxwell is not entitled to the exemption.

CONCLUSION OF LAW

The Maxwell Memorial Football Club, Inc. is not an institution of purely public charity within the meaning of Article VIII, §2(a)(v) of the Pennsylvania Constitution of 1968, and section 204(10) of the Tax Reform Code of 1971, 72 P.S. §7204(10) (Supp. 1974-1975), and, therefore, is not entitled to an exemption from sales tax.

ORDER

AND NOW, this 23rd day of April, 1975, the adjudication of the Board of Finance and Revenue issued in the above-noted matter on August 23, 1972 is hereby affirmed.