Hospital Utilization Project, Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued May 9, 1983, before Judges ROGERS, BLATT and DOYLE, sitting as a panel of three.

*Joyce McKeever, Kirkpatrick, Lockhart, Johnson & Hutchison,* for petitioner.

*Paul S. Roeder,* Deputy Attorney General, with him *LeRoy S. Zimmerman,* Attorney General, for respondent.

OPINION BY JUDGE DOYLE, June 21, 1983:

The Hospital Utilization Project appeals here a decision of the Board of Finance and Revenue (Board) which denied its application for tax-exempt status and its petition for refund of sales and use taxes paid in the purchase of supplies and equipment. We affirm.

The Hospital Utilization Project (HUP) was created in 1963 as a joint project funded by the Hos-

pital Council of Western Pennsylvania with contributions from the Allegheny County Medical Society Foundation, thirty-three private and corporate foundations, and "in kind" donations of computer services from Blue Cross of Western Pennsylvania. HUP provides statistical analyses of patient treatment and cost data and offers these analyses to hospitals and other health care providers to assist in their efforts to maintain efficiency and ultimately reduce health care costs.

In 1967, the Hospital Council withdrew from the project and HUP was funded through direct payment from hospitals for HUP services. In 1969, HUP was organized as a non-profit corporation under Pennsylvania law.[1]

In 1965, when HUP was operated as a joint venture by the Hospital Council and the Medical Society Foundation, the Department of Revenue (Department), by letter, granted HUP tax-exempt status. HUP was permitted to use the Council's and Foundation's tax-exemption numbers to avoid payment of sales and use taxes. In 1980, apparently as part of an internal monitoring procedure, the Department directed HUP to apply for its own tax-exemption number. HUP's application was then rejected. HUP thereafter filed for a refund and appealed its denial to the Board. This appeal followed affirmance of the denial by the Board.

HUP claims to qualify for the charitable exemption provided in Section 204(10) of the Tax Reform Code of 1971 (Code),[2] which provides in pertinent part:

---

[1] HUP enjoys tax-exempt status under §501(c)(3) of the Internal Revenue Code.

[2] Act of March 4, 1971, P.L. 6, as amended, 72 P.S. §7204(10).

The tax imposed by section 202 shall not be imposed upon

.  .  .  .

(10) The sale at retail to or use by (i) any charitable organization . . . or nonprofit educational institutional. . . .

72 P.S. §7204(10). The code does not define "charitable organization." There is no dispute, however, that Article VIII, §2(a)(v) of the Pennsylvania Constitution of 1968 is controlling. *Commonwealth v. The American Anti-Vivisection Society*, 32 Pa. Commonwealth Ct. 70, 377 A.2d 1378 (1977), *aff'd per curiam*, 487 Pa. 41, 407 A.2d 1308 (1979); *Maxwell Memorial Football Club, Inc. v. Commonwealth*, 18 Pa. Commonwealth Ct. 464, 336 A.2d 460 (1975). Article VIII, §2(a)(v) empowers the legislature to exempt from taxation "[i]nstitutions of purely public charity."

HUP urges that it qualifies as an "institution of purely public charity"[3] and relies on *American So-*

---

[3] HUP urges that, although Section 236 of the Code, 72 P.S. §7236 expressly provides that the taxpayer has the burden of proof to show entitlement to exemption, we should shift the burden in the instant case. HUP argues that, in light of the 1965 letter from the Department granting HUP tax-exempt status, the Commonwealth's present position must be seen as a reversal of an earlier position, and the Commonwealth should therefore bear the burden. *See Kentucky Fried Chicken of Altoona, Inc. v. Unemployment Compensation Board of Review*, 10 Pa. Commonwealth Ct. 90, 309 A.2d 165 (1973). The argument is without merit. The Department is not seeking to revoke tax-exempt status. The entity granted tax-exempt status in 1965 was a joint experimental project funded largely by two tax-exempt institutions; the project was granted tax-exempt status under the name and number of its institutional sponsors. In 1967 and 1969, the character of the entity and its funding changed. The Department is simply requiring the new entity to establish its entitlement to tax-exempt status as provided by Section 236 of the Code.

*ciety for Testing and Materials v. Board of Revision of Taxes*, 423 Pa. 530, 225 A.2d 557 (1967). In that case, the Society was a non-profit organization which kept abreast of scientific developments in the field of engineering and materials, and conducted research and tests, gave lectures and seminars, and published papers and reports relating to the standardization of engineering specifications and the development of methods for testing materials such as steel, iron, rubber, asphalt and the like. The City of Philadelphia contended that the Society was not a "purely public charity" because industry was the primary beneficiary of the Society's efforts. The Supreme Court found that whatever gain accrued to industry eventually accrued to the benefit of the public as well. HUP argues that its services similarly, although not provided directly to the public, eventually benefit the public through reduced medical costs.

While it is undeniable that the public ultimately benefits from increased hospital efficiency and reduced medical costs, and HUP's statistical services are directed toward this goal, ultimate public benefit is not the single criterion by which a "purely public charity" is identified for purposes of tax exemption. *See Robert Morris College v. Board of Property Assessment Appeals and Review*, 5 Pa. Commonwealth Ct. 648, 291 A.2d 567 (1972).

> "[A]n institution claiming to be benevolent or charitable . . . must possess an *eleemosynary characteristic* not possessed by institutions . . . devoted to private, gain or profit. What is 'given' must be more nearly gratuitous than for a price which impresses one as being proportionate to the services rendered." (Emphasis in original.)

*Id.* at 658, 291 A.2d at 573 (quoting *Ogontz School Tax Exemption Case*, 361 Pa. 284, 294, 65 A.2d 150, 154 (1949)).

It is in this regard that HUP is distinguishable from the charitable organization in *American Society for Testing*. The record in *American Society for Testing* showed that all Society lectures, paper discussions, seminars and symposia were open to the public without charge. In addition, although the Society sold its reports and publications to the public, they sold for less than it cost the Society to print them. The record also reflected a per annum operating loss of $110,000 during one year and $180,000 the previous year. HUP, in contrast, has amassed a $686,000 surplus over the last three years. HUP, by its own admission, charges for its services based on the volume of a particular hospital's activity and the computer time required to encode patient information. HUP also markets its services to out of state institutions and sells its data analysis to profit-making as well as non-profit institutions.[4] None of HUP's services are offered free and the record shows that private enterprises are offering similar services to hospitals at prices competitive with HUP's. We do not believe the record reflects an *eleemosynary characteristic* in the HUP enterprise as it is currently operated. Rather, we think it clear that HUP provides an admittedly valuable health care service and charges a price for that service which impresses us as being proportionate to the service rendered.

Finally, HUP argues that it is also exempt from sales and use taxes because it is engaged in manu-

---

[4] Consequently, any tax benefit enjoyed by HUP is passed along not merely to non-profit institutions serving the citizenry of the state but to enterprises organized for profit and to organizations located outside the state.

facturing operations and qualifies under Section 201-(k)(8)(ii) of the Code, 72 P.S. §7201(k)(8)(ii).   The argument is specious.   HUP provides health care data processing and reporting *services*.   Its clients purchase the compilation and analysis of individualized statistical data.   This is a service not a manufactured product.

### ORDER

Now, June 21, 1983, the order of the Pennsylvania Board of Finance and Revenue in the above referenced matter, dated May 27, 1981, No. RST-4370 is hereby affirmed.