## Commonwealth *v.* Gulf Oil Corporation, Appellant.

Argued May 27, 1948.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*E. Russell Shockley*, with him *Wm. A. Schnader* and *Schnader, Kenworthey, Segal & Lewis*, for appellant.

*Carl F. Chronister*, Deputy Attorney General, with him *T. McKeen Chidsey*, Attorney General, for appellee.

OPINION BY MR. JUSTICE HORACE STERN, July 6, 1948:

Gulf Oil Corporation, a corporation of the State of Pennsylvania, filed with the Department of Revenue its capital stock tax report for the calendar year 1940. The Department, after making certain adjustments, settled the tax for that year in the amount of $318,664.62, but later, of its own motion and with the approval of the Auditor General, resettled it in the amount of $332,-033.27. Thereupon the corporation filed with the Board of Finance and Revenue a petition for review; this being refused, it took an appeal to the Court of Common Pleas of Dauphin County, which, after hearing, reduced the tax to $331,219.81. After allowing credit for the portion theretofore paid this left a balance due the Commonwealth of $12,555.19, and the Court entered judgment for that amount plus Attorney General's commission of $627.76, or a total of $13,182.95, with interest on $12,555.19 from March 15, 1941. From that judgment the corporation now appeals.

According to the Act of June 1, 1889, P. L. 420, section 20, as last amended by the Act of May 16, 1945, P. L. 606, the capital stock of a corporation is valued and appraised for capital stock tax purposes at its actual value in cash, taking into consideration the average sale price of the stock during the year, the net earnings or profits of the company, the intrinsic value of its

assets, and the amount of its indebtedness. Since, however, there may be assets which, because of constitutional or statutory provisions, are exempted or relieved from the tax, the Act of June 22, 1931, P. L. 685, provides that whenever any corporation owns such assets, "the proportion of the capital stock exempted or relieved from the capital stock tax . . . shall be the proportion which the value of such assets bears to the value of the total assets owned by such corporation. . . ."

Gulf Oil Corporation owned some exempted assets and accordingly an apportionment of the value of its capital stock had to be made in order to ascertain the portion which was taxable. The capital stock was appraised for 1940 at $255,000,000. Except for a disputed item hereinafter referred to, the value of the taxable assets for that year was $95,125,221 and the value of the total assets $388,945,093, so that the taxable value of the capital stock would be $\dfrac{\$\ 95{,}125{,}221}{388{,}945{,}093} \times \$255{,}000{,}000$, or $62,365,952, the tax on which at the statutory rate of 5 mills would be $311,829.77. It is that amount which, according to appellant, constituted its proper tax liability, but the Commonwealth contends that there was another asset which had to be included in the computation and which is the subject of the present controversy.

It appears that Gulf Refining Company, a corporation of the State of Delaware, is a wholly owned subsidiary of appellant corporation. Prior to September, 1940 appellant and Gulf Refining Company were each indebted to an insurance company for a loan in the amount of $25,000,000. They desired to refinance these loans at a lower rate of interest and entered into preliminary arrangements whereby they were each to borrow $25,000,000 from various banks. The banks, however, insisted that the notes of Gulf Refining Company be endorsed by appellant; appellant did not want to do this and accordingly the plans were changed; on September 9, 1940 appellant borrowed the entire $50,000,000

from the banks, used one-half of it to retire its own debt to the insurance company and advanced the other half to Gulf Refining Company to enable that company to liquidate its similar indebtedness; Gulf Refining Company gave its note to appellant in the amount of $25,000,000, bearing the same rate of interest and payable in the same instalments, both as to dates and amounts, as appellant's notes to the banks. The $50,000,000 was set up on appellant's books as a liability to the banks and its loan to Gulf Refining Company as an advance to its subsidiary.

The Commonwealth claims that the $25,000,000 note of Gulf Refining Company constituted a taxable asset of appellant for the last four months of the year 1940.[1] Appellant, on the other hand, insists that the loan to it from the banks and the contemporaneous loan by it to its subsidiary should be considered as a single transaction; that appellant did not derive any benefit therefrom by way of profits; that the money was borrowed for, and used by, the subsidiary alone; that appellant was merely a conduit for channeling the funds to the subsidiary and the interest and instalment payments of principal from the subsidiary back to the banks; that the transaction did not increase the net worth of appellant or contribute anything to the value of its capital stock; and that the asset and liability items appearing on its records were merely bookkeeping entries.

We cannot accept this view of the transaction so far as the imposition of the capital stock tax is concerned. Appellant and its subsidiary are distinct corporations notwithstanding that the former owns all of the latter's stock; (see *Callery's Appeal*, 272 Pa. 255, 116 A. 222). For business or financial advantages of its own appellant borrowed the money from the banks and loaned part of it to Gulf Refining Company; when it received

---

[1] The loan, reduced by instalment payments, continued after 1940, but in the present case we are concerned only with that particular tax year.

the $50,000,000 that sum became one of its gross assets even though attended by a corresponding liability; had it so chosen it could have invested the money in tangible property or could have loaned it, within the limits of its corporate powers, to some other corporation or individual; in any such case, as appellant itself admits, the property thus acquired or the loan thus made would have constituted a taxable asset; the fact that here the loan was made to a corporation the stock of which was owned by appellant did not change what would have been the legal effect of such hypothetical transactions. While it is true, of course, that $25,000,000 of its liability to the banks and its $25,000,000 claim against its subsidiary mathematically cancelled one another, the money owed to it by Gulf Refining Company and represented by the latter's note was clearly an independent asset the same as any other account or loan receivable; it was recognized as such on appellant's books and was property which appellant's creditors, if otherwise unpaid, could have attached in satisfaction of their claims. As the court below properly said in its opinion: "Why or where or how the parent obtained the funds which it advanced to its subsidiary in no way alters the situation. And we fail to see how the fact that the defendant has a separate and distinct liability to pay a similar sum to certain banks in any way affects the value of the asset." Indeed appellant's contention to the contrary would amount to this,—that by the transaction in controversy it subjected itself to a liability to the banks without at the same time acquiring an asset from the corporation to which it made a loan of the money thus borrowed. It was said in *Union Pacific R. R. Co. v. Commissioner of Internal Revenue*, 69 F. 2d 67, 69: "It is urged that the bonds of a wholly owned subsidiary are never held by the parent company for investment; that the holding of such bonds gives the parent company no investment which it would not otherwise have because the stock ownership of the subsidiary assures the

parent realization of any net income of the subsidiary, and it is immaterial whether such income is realized by way of dividends or of interest on the bonds. . . . We cannot accede to this argument. When money of the parent corporation is loaned to the subsidiary in return for its obligation evidenced by bonds [in the present case by notes], the corporations are intended to be treated as distinct legal entities; the stock ownership of the subsidiary is immaterial." And *In re Tulsa Cold Storage Co.*, 188 Okla. 6, 106 P. 2d 124, it was held that where a subsidiary corporation advanced funds to its parent corporation to which it was also indebted, in ascertaining the true value of the capital stock of the subsidiary for taxation purposes the advancement should be considered as an asset of the subsidiary and its indebtedness to the parent corporation as a liability.

While in our opinion, therefore, the Gulf Refining Company obligation must be considered a taxable asset in computing appellant's capital stock tax, it came into existence only in September, 1940 and therefore it should, for that particular year, be valued at only one-third of its full amount, or $8,333,333. It is too clear for discussion, however, that, being a taxable asset to that extent, it was only to the same extent part of the total assets of the corporation, and there is no basis whatever for appellant's contention that it should be regarded as a *taxable* asset in the amount of $8,333,333 but included in the *total* assets as of a value of $25,000,000; so to hold would be to make it a partially exempted instead of a wholly taxable asset as in fact it was. In the resettlement of the corporation's liability the Department of Revenue was therefore correct, when formulating the apportionment fraction prescribed by the Act of 1931, in adding $8,333,333 to both the numerator of the fraction (the sum of the taxable assets) and the denominator (the sum of the total assets). But the Commonwealth, instead of insisting on the amount of

the tax as thus determined, suggested to the Court of Common Pleas, which adopted the suggestion, that a computation should be made on the basis of the period of eight months of the year during which the obligation of the subsidiary to appellant was not in existence, and another computation on the basis of the period of four months during which the obligation was in effect,[2] the sum of the two amounts thus determined to constitute the total tax for the year. The result of this calculation was to reduce the amount fixed by the Department of Revenue by $813.46. Such a method, which in some instances might perhaps be properly employed, was not adapted to the situation here presented since there were no separate balance sheets of the corporation as of the close of the first eight months and the court was therefore obliged to assume, without any evidence to support the assumption, that the values of the taxable assets and total assets of the corporation, eliminating the item here in controversy, were, at the end of the eight months period, identical with the values of the taxable assets and total assets respectively at the end of the calendar year. However, since the Commonwealth itself requested the adoption of that method and has not appealed from the result obtained thereby, the judgment will be affirmed as entered.

Judgment affirmed.

---

[2] The calculation for the four months period was made by adding $25,000,000 to the numerator of the apportionment fraction and an equal amount to the denominator, multiplying by $255,000,000, taking one-third of the product, and applying the 5 mills rate to the resulting base.