J. L. Mott Corporation, Appellant, *v.* Commonwealth of Pennsylvania, Board of Finance and Revenue, Appellee.

494

Argued January 7, 1974, before President Judge
BOWMAN and Judges KRAMER, WILKINSON, JR., MEN-
CER, ROGERS and BLATT. Judge CRUMLISH, JR. did not
participate.

*Harry J. Rubin,* with him *Krekstein, Rubin and
Lasday,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for
appellee.

OPINION BY PRESIDENT JUDGE BOWMAN, March 27, 1974:

This is an appeal by J. L. Mott Corporation, a foreign corporate taxpayer, from the action of the Board of Finance and Revenue in refusing its petition for a resettlement of its 1962 calendar year foreign franchise tax. The parties have stipulated the facts, which we adopt as our findings of fact.

Appellant, a New Jersey corporation, was authorized to do business in Pennsylvania at all times material to this appeal. While appellant's certificate of incorporation in New Jersey includes manufacturing as a corporate purpose, during 1962 appellant itself carried on no manufacturing operations in Pennsylvania. It did, however, own a one-third undivided interest in real estate located in Philadelphia, which consisted of a lot and building. Appellant and co-owners leased this real estate to five unrelated tenants, several of which carried on manufacturing activities in the building. Appellant employed several maintenance and custodial personnel to care for the real estate. The rental received from tenants engaged in manufacturing constituted 89.4% of the total rental received by appellant.

The foreign franchise tax subjects foreign corporations to a tax at the rate of five mills imposed on the value of the corporation's capital stock. Act of June 1, 1889, P. L. 420, §21(b), as amended, 72 P.S. §1871 (b). However, the Act of 1889 exempts from the value of the corporation's capital stock certain assets, which are actually and exclusively used in manufacturing in Pennsylvania, according to a statutorily prescribed formula of apportionment fractions (tangible property, wages and salaries, and gross receipts fractions). 72 P.S. §1871(b).

The appellant submitted its 1962 franchise tax report to the Department of Revenue, computing its fran-

chise tax following the statutory formula for those taking advantage of the manufacturer's exemption. In applying the exemption to its fractions, appellant excluded from the numerator of the tangible property fraction the value of all tangible property in Pennsylvania reported as used in manufacturing. This value was determined by taking the total value of appellant's one-third undivided interest in the real estate located in Philadelphia and applying to it a percentage (89.4%) representing the rental value of these premises being used by appellant's tenants for manufacturing.

Appellant also excluded from the numerator of the wages and salaries fraction the amount of compensation paid to appellant's employees reported as engaged in manufacturing in Pennsylvania. This amount was determined by taking the total amount of compensation paid by appellant to employees in Pennsylvania and applying the same rental percentage (89.4%) to this amount.

Appellant also excluded from the numerator of the gross receipts fraction the amount of gross receipts reported to be incident or appurtenant to manufacturing in Pennsylvania. This amount was determined by taking the total amount of rent received and applying the same rental percentage (89.4%) to this amount.

Appellant's exclusion of the value of tangible property reported as used in manufacturing from the numerator of the tangible property fraction, and the computation used to determine that value, are not disputed by the Commonwealth.

The sole issue before this Court is whether this foreign corporation is entitled by law to claim the aforementioned exclusions from the numerator of its wages and salaries fraction and from the numerator of its gross receipts fraction, respectively. Appellant claims that it is entitled to these exclusions because, as a corporation whose capital is invested in manufacturing,

it is entitled to the use of the exemption; and because it is entitled to the exemption, it is entitled to reflect the exemption in the numerators of all three fractions rather than a single exclusion from the tangible property fraction.

The Commonwealth does not dispute taxpayer's exclusion from the tangible property fraction, because *Commonwealth v. Jeca Corp.*, 81 Dauph. 36, 31 Pa. D. & C. 2d 759 (1963), interpreting the Act of June 1, 1889, P. L. 420, §21(b), *as amended*, 72 P.S. §1871(b), appears to permit this exclusion, and because the Act of July 11, 1901, P. L. 668, 72 P.S. §1893, amending the aforementioned Act of 1889, also appears to permit this exclusion. Recognizing that *Jeca* was a capital stock tax case, in which a domestic corporation was seeking to exclude the value of capital assets which had been invested in manufacturing from the numerator of its single tangible property apportionment fraction, the taxpayer's success in *Jeca* has no bearing on whether appellant should be successful in its appeal on these novel issues. We must look to the statutory language under which appellant seeks its exemption (Section 21(b)(2) and (3) of the Act of 1889, 72 P.S. §1871 (b)(2) and (3)) to resolve these issues.

The first question is, are appellant's expenditures for wages, salaries, commissions, or other compensation, which it proposes to exclude, paid to employees who are "exclusively engaged in manufacturing" in this Commonwealth? Notwithstanding the Commonwealth's concession, dictated by *Jeca* and the Act of 1901, that appellant's real estate is tangible property actually and exclusively used in manufacturing, this Court is convinced that appellant's franchise in Pennsylvania relates only to the real estate market, and that its employees comprise only a maintenance crew for that real estate; they are *not* employees exclusively engaged in manufacturing. It is the appellant who carries the

burden to prove it is entitled to the claimed exemption, and appellant has made no effort to show how its employees are "exclusively engaged in manufacturing." The record, to the contrary, shows that appellant is a supplier and maintainer of real estate, and that its market is not in manufactured products.

Appellant has asserted that if it were manufacturing the products that its tenants are manufacturing, the wages paid by it to its employees in Pennsylvania who cared for the plant would be eligible for the exemption. However, our Supreme Court has recognized that there are instances "where corporations have been denied the manufacturing exemption even though the same assets, in the hands of a manufacturer, would have been exempt." *Commonwealth v. Weldon Pajamas, Inc.,* 432 Pa. 481, 487, 248 A. 2d 204, 207 (1968). *See also Hazen Engineering Co. v. City of Pittsburgh,* 189 Pa. Superior Ct. 531, 540, 151 A. 2d 855, 859 (1959). This is one of those instances. We believe that the legislative intent of exempting the value of wages paid to "exclusively manufacturing" employees from the numerator of the wages and salaries fraction is hardly met by the appellant's practice of excluding an amount which represents nothing more than a percentage of all compensation paid to its custodial crew, especially where the percentage is determined by a fraction whose numerator is the rental income received from tenants engaged in manufacturing and whose denominator is total rental income received from all tenants. Appellant's proposed exclusion, and its computation thereof, bear no significant relationship to the statutory language.

The second question is, are the appellant's amount of gross receipts, which it proposes to exclude, "strictly incident or appurtenant to manufacturing in this Commonwealth"? In view of the foregoing, it is clear that the rent received by appellant is nothing more

than rental income from property which is clearly situated in the real estate market. None of the appellant's gross receipts arise from the sale of the manufactured products of its tenants, and, therefore, they are not "strictly incident or appurtenant to manufacturing." Other than what is noted above, appellant has made no effort to show how they are strictly incident or appurtenant to manufacturing. *See Commonwealth v. The Armstrong Daily, Inc.*, 90 Dauph. 199, 46 Pa. D. & C. 2d 536 (1968).

Appellant finally argues that the restrictive view of the manufacturer's exemption taken by the Commonwealth in this case produces an unfair discrimination in application of the manufacturer's exemption to foreign corporations vis-a-vis domestic corporations. Starting with a familiar principle of construction, appellant advances the following reasoning: "The franchise tax is imposed on foreign corporations doing business in Pennsylvania. While it differs in certain respects from the capital stock tax which is applicable to domestic corporations, both taxes are governed by the same basic statute, the Act of June 1, 1889, P. L. 420, §21(b), as amended, 72 P.S. §1871. It has been frequently pointed out that these two taxes were designed to subject domestic and foreign corporations to substantially similar tax burdens. [Citations omitted.] Thus, despite some differences in statutory language, we are convinced that the Legislature intended the manufacturing exemption to be administered uniformly and in accordance with the same basic principles, regardless of whether the taxpayer was a domestic or a foreign corporation." *Commonwealth v. Weldon Pajamas, Inc., supra,* 432 Pa. at 483-84, 248 A. 2d at 205.

Appellant contends that this principle of uniform administration of the manufacturer's exemption requires this Court to give the same relief to foreign corporations that is afforded to domestic corporations

under the manufacturer's exemption. The Act of June 1, 1889, P. L. 420, §21(b), *as amended,* 72 P.S. §1871 (b), requires that a foreign corporation use a three factor apportionment formula (employing tangible property, wages and salaries, and gross receipts fractions) to determine its apportionment percentage for its franchise tax computation. On the other hand—and this is what appellant asserts is discriminatory because it lacks uniformity—a domestic corporation is entitled to use a single factor apportionment formula (employing *only* a tangible property fraction) to determine its apportionment percentage for its capital stock tax computation, Act of June 22, 1931, P. L. 685, 72 P.S. §1896, or in the alternative, to elect to use a three factor apportionment formula (the same formula used by foreign corporations) to determine its apportionment percentage, Act of October 19, 1967, P. L. 446, *amending* the Act of June 1, 1889, P. L. 420, 72 P.S. §1871. The election of alternative tax computations—available by law *only* to the domestic corporate taxpayer—allows the domestic corporation to choose the most advantageous tax computation from the two alternatives. Appellant urges that the "principle of uniformity" requires this Court to permit appellant, a foreign corporation, its proposed exclusions, in order to give comparable scope to the manufacturer's exemption claimed by a foreign corporation in this case to that given to a domestic corporation under similar facts through the election of alternative computations. To allow a comparable scope of relief to the foreign corporation claiming the manufacturer's exemption, appellant urges this Court to allow the numerators of all three fractions to reflect elimination of amounts attributable to manufacturing.

In the first place, the principle of uniform administration of the manufacturer's exemption regardless of whether the taxpayer is a domestic or a foreign corpo-

ration is *only* valid where the capital stock tax and the foreign franchise tax are governed by the same statute, the Act of June 1, 1889, P. L. 420, *as amended*, 72 P.S. §1871. In this case the provisions of law which govern the use of the several apportionment formulas for computation of the manufacturer's exemption are found in two different statutes—the Act of 1889, *as amended*, and the Act of 1931. The Act of 1931 is *not* an amendment to the general Act of 1889, but instead is an act specifically providing for the settlement of capital stock tax liability in the case of domestic corporations which own assets exempted from capital stock tax. The judicial pronouncement of uniform administration of the manufacturer's exemption is inapplicable where the Legislature has, in its wisdom, determined to treat the settlement of capital stock tax liability and foreign franchise tax liability under two different statutes.

Furthermore, it is the language of the Act of 1889 only which determines which assets qualify for relief under the manufacturer's exemption afforded by the Act. Our discussion of the issues above clearly indicates that the proposed exclusions do not so qualify.

Therefore, the appellant's final argument is also without merit.

### Conclusions of Law

1. J. L. Mott Corporation, a New Jersey corporation, is subject to foreign franchise tax liability under the Act of June 1, 1889, P. L. 420, *as amended*, 72 P.S. §1871, for the year ending December 31, 1962.

2. The taxpayer, J. L. Mott Corporation, has not met the burden of showing that the necessary conditions exist to entitle it to exclusion of certain proposed amounts from the numerator of its wages and salaries fraction and from the numerator of its gross receipts fraction.

3. The Commonwealth properly settled the 1962 franchise tax liability of J. L. Mott Corporation at $824.00.

4. There exists no unfair discrimination in this application of the manufacturer's exemption to the foreign corporation vis-a-vis a domestic corporation.

5. Judgment should be entered in favor of the Commonwealth and against J. L. Mott Corporation in the amount of $824.00.

DECREE NISI

Now, this 27th day of March, 1974, the appeal of J. L. Mott Corporation is hereby dismissed and judgment is directed to be entered in favor of the Commonwealth of Pennsylvania and against J. L. Mott Corporation, in the amount of $824.00, and marked satisfied, the said amount having been paid, unless exceptions be filed hereto within thirty (30) days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree.