Greenville Steel Car Company, Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

Argued January 7, 1975, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Carl F. Chronister,* with him *Reed, Smith, Shaw & McClay,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, for appellee.

OPINION BY JUDGE CRUMLISH, JR., July 22, 1975:

This appeal presents a narrow but important question of first impression under the Tax Reform Code of 1971, Act of May 4, 1971, P.L. 6, *as amended,* 72 P.S. §§7101 et seq. (Supp. 1974-1975). May a domestic corporation electing to compute and pay its capital stock-franchise tax as a foreign corporation apportion the actual value of its capital stock if it does not have income from business activity which is taxable in another state for the taxable year ending December 31, 1971?

The parties have waived a jury trial and stipulated to the following facts which are binding upon this Court as well as the parties. *Anastasi Brothers Corp. v. Commonwealth,* 455 Pa. 127, 315 A.2d 267 (1974).; *Commonwealth v. Carheart Corp.,* 450 Pa. 291, 299 A.2d 628 (1973). Greenville Steel Car Company (hereinafter "Appellant") is a Pennsylvania corporation which manufactures and sells railroad cars and earth moving equipment with its principal plant located in Greenville, Pennsylvania. In addition to the sale of its products, both intrastate and interstate during the calendar year ending December 31, 1971, the taxable year here involved, Appellant leased railroad cars to customers with locations both within and without the state. It, however, was not assessed with a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax by any other state for the 1971 taxable year, although it did pay various ad valorem, property and utility taxes to other states. A capital stock tax report was duly filed with the Department of Revenue (Department) in which Appellant elected to compute its tax as a foreign corporation under section 602(a) of the Tax Reform Code of 1971 (Code), 72 P.S. §7602(a) (Supp. 1974-1975). The actual value of

its capital stock was computed to be $15,000,000.00 which, after applying the three-factor apportionment formula of sections 401(3)2. (a)·(10)—(18) of the Code[1] 72 P.S. Department settled Appellant's capital stock tax liability at $92,112.00 by reappraising the actual value of its capital stock to be $16,000,000.00 and applying a single §7401(3)2. (a)(10)(18) (Supp. 1974-1975), yielded a tax liability of $74,832.75.[2] On September 1, 1972, the taxable assets fraction of $25,422,668.00/$44,159,179.00. The Department disallowed apportionment because Appellant did not have income taxable in another state within the meaning of sections 401(3)2. (a)(2) and (3)

---

1. *As amended* by the Act of September 9, 1971, P. L. —, No. 105.

2. Appellant apportioned the actual value of its capital stock to obtain taxable value, and hence its capital stock—franchise tax liability as follows:

(a) $\dfrac{\text{Average value of tangible property in Pennsylvania} \quad 21{,}209{,}818}{\text{Average value of all tangible property} \quad 49{,}490{,}140} = .428566$

$+$

(b) $\dfrac{\text{Wages, salaries, etc. assignable to Pennsylvania} \quad 9{,}018{,}583}{\text{Total wages, salaries, etc.} \quad 9{,}018{,}583} = 1.000000$

$+$

(c) $\dfrac{\text{Sales assignable to Pennsylvania} \quad 3{,}780{,}225}{\text{Total sales elsewhere} \quad 55{,}519{,}279} = .068088$

$\qquad\qquad\qquad 1.496654$

$1.496654 \div 3 = .498885$

15,000,000.00 (actual value) × .498885 =
7,483,275.00 at .010 = $74,832.75 .

Appellant has agreed that if this Court determines that it was authorized to employ the above apportionment formula, the same fractions will be employed for computing its capital stock liability for the 1971 taxable year. If apportionment is ultimately denied to Appellant, it will abide by the tax liability as redetermined by the Department.

of the Code, 72 P.S. §7401(3)2. (a) (2) and (3) (Supp. 1974-1975), which it interpreted as a condition precedent to apportionment or allocation for franchise tax purposes. Upon the filing of a petition for resettlement, the Department resettled Appellant's tax liability to $86,355.75 based upon the same single taxable assets fraction as applied to Appellant's original appraisal value of $15,000,000.00. On February 28, 1973, the Board of Finance and Revenue refused Appellant's petition for review of this settlement, and this appeal followed. We affirm.

Section 602(a) of the Code, 72 P.S. §7602(a),[3] preserved the election available to a domestic corporation to compute its capital stock as would a foreign corporation computing its franchise tax as set forth in section 21(b) of the Franchise Tax Act, Act of June 1, 1889, P.L. 420, *as amended*, 72 P.S. §1871(b) (repealed by the Code). Section 602(a) provides in pertinent part: "That every domestic corporation . . . shall be subject to, and pay . . . a tax at the rate of ten mills, upon each dollar of the actual value of its whole capital stock . . . as ascertained in the manner prescribed in section 601, for the calendar year 1971 and the fiscal year beginning in 1971 and each year thereafter, except that any domestic corporation . . . may elect to compute and pay its tax under and in accordance with the provisions of subsection (b) of this section 602. . . ." Subsection (b) of 602, in turn, provides: "Every foreign corporation, joint-stock association, limited partnership, and company *whatsoever*, from which a report is required under section 601 hereof, shall be subject to and pay . . . a franchise tax at the rate of ten mills . . . upon a taxable value to be determined in the following manner. The actual value of its whole capital stock . . . shall be ascertained in the manner prescribed in section 601 of this article. *The taxable value*

---

3. *As amended* by the Act of August 31, 1971, P.L. 362.

*shall then be determined by employing the relevant apportionment factors set forth in Article IV....*" 72 P.S. §7602(b), (Emphasis added.) The crux of the instant controversy involves an identification of "the relevant apportionment factors set forth in Article IV" insofar as they apply to a determination of taxable value for franchise tax purposes.

As the above statutory provisions indicate, Article VI of the Code, imposing a capital stock-franchise tax, does not establish an independent apportionment formula as under the prior law, but rather incorporates by reference the apportionment formulas utilized in computing the corporate net income tax under Article IV of the Code (sections 401 et seq., 72 P.S. §7401 et seq.). Under section 401(3), defining "taxable income," three methods of determining taxable base are delineated, the utilization of which is dependent upon whether the corporation taxed 1) transacts business entirely within the state [§401(3)1.]; 2) transacts business within and without the state [§401(3)2.]; or 3) is a regulated investment company which transacts business within and without the state [401(3)3.]. Appellant clearly falls within the second category, and thus its right to apportion taxable income as well as taxable value is dependent upon its compliance with the provisions of section 401(3)2., 72 P.S. §7401(3)2. In apportioning actual value of its capital stock, Appellant relied upon subsections (a)·(10)-(18) of section 401(3)2., 72 P.S. §7401(3)2.(a)· (10)-(18), as the "relevant apportionment factors set forth in Article IV" for franchise tax purposes. These subsections essentially reestablish the three factor—property, payroll, and sales—apportionment formula under the repealed Franchise Tax Act. Before this apportionment formula may be employed, however, subsection (2) of 401(3)2.(a) requires, with certain exceptions not relevant here, that the taxpayer have "income from business activity which is taxable both within and without this State...." A

corporation "is taxable in another state if in that state he is subject to a net income tax, a franchise tax measured by net income, *a franchise tax for the privilege of doing business, or a corporate stock tax,* or that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or does not." Section 401(3)2.(a)(3) of the Code, 72 P.S. §7401(3)2.(a)(3) (Emphasis added.) We agree with the Commonwealth that these provisions establish a condition precedent to allocation and apportionment for both corporate net income and franchise tax purposes. As previously indicated, the stipulation entered into merely states that Appellant was not "assessed" with any of the taxes enumerated in section 403·(a)2.(a)(3) by any other state for the year in question. The test of section 403(a)2.(a)(3), however, is the taxpaper's potential liability for such taxes in another state, i.e., whether the foreign "state has jurisdiction to *subject* the taxpayer" to such taxes. The possible distinction between actual assessment and tax liability is not raised here, but in any case, we believe the burden would be on the taxpayer to allege and prove that it was subject to the foreign taxes enumerated in section 403(3)2.(a)(3) before it can employ the apportionment factors in determining taxable value. As Appellant has not established that here, we must conclude that it was limited to the single taxable assets fraction applied by the Department.

Appellant relies upon the language "[e]very foreign corporation . . . *whatsoever*" employed in section 602(b) as indicative of a legislative intent that a foreign corporation is entitled to apportion the value of its capital stock to determine taxable value for franchise tax purposes regardless of whether the corporation is transacting business and subject to similar taxation in another state. This contention is based upon the Supreme Court's construction of this same language contained in section

20 (b) of the repealed Franchise Tax Act, 72 P.S. §1871 (b), in *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52 213 A.2d 277 (1965). In *Reick*, a Delaware corporation authorized to do business in Pennsylvania acquired as a passive investment two vacant lots in Florida. The corporation there involved was not authorized to do business in Florida and paid no taxes to that State in 1956. For the same taxable year, the corporation filed a franchise tax report with the Commonwealth in which it included in the denominator of its tangible property fraction the value of the Florida lots. As the corporation had little tangible property in Pennsylvania, the net effect of this inclusion was to substantially decrease the taxpayer's Pennsylvania franchise tax liability. The Commonwealth excluded these lots from the denominator of the tangible property fraction, contending that the apportionment formula of the Franchise Tax Act was only available to foreign corporations "doing business" in states in addition to Pennsylvania. Although the Supreme Court noted that the Commonwealth's argument was consistent with the theory of apportionment for franchise tax purposes, a strict interpretation of the statute supported the corporate taxpayer's right to apportion. This conclusion was based upon a juxtaposition of the relevant language of the repealed Franchise Tax Act and Corporate Net Income Tax Act, both of which apportioned or allocated the appropriate tax bases upon identical apportionment formulas:

"... However, in one important respect, the statutes differ. The Corporate Net Income Tax Act (§2.2), provides for the application of the apportionment formula '[i]n case the entire business of any corporation ... is not transacted within this Commonwealth.' The Franchise Tax Act draws no such distinction; on the contrary, its statutory language makes applicable the tax to *every* foreign corporation *whatsoever* and does not differentiate between foreign corporations

in the application of the formula. Such a diversity of approach by the same legislative body on the same date to the same general problem of the taxation of foreign corporations is highly significant and indicative of a legislative purpose not to restrict the use of the apportionment formula in the Franchise Tax Act to foreign corporations whose 'entire business' is not 'transacted within this Commonwealth.'

"In addition to the diversity of the legislative approach in these two tax statutes, we have the plain, unambiguous and comprehensive language of §21 (b) of the Franchise Tax Act applied to 'every' foreign corporation 'whatsoever.' Under such circumstances, we find no expression of a legislative intent to confine the use of the apportionment formula to those foreign corporations who transact business *without* as well as *within* Pennsylvania.

"In theory we may agree with the Commonwealth that the use of the apportionment formula *should be* subject to the restriction which it urges and we are fully aware that, by the lack of such restriction in the statute, a foreign corporation by the subterfuge of title ownership of tangible property in another jurisdiction may effect a considerable reduction in its tax liability in Pennsylvania. However, if the plain language of the statute provides no such restriction, it is not for the courts to add such a restriction but a matter for legislative action. Recently, this Court said: '. . . it is not for us to legislate or by interpretation to add to legislation, matters which the legislature saw fit not to include: [citing authorities]': Hochgertel v. Canada Dry Corporation, 409 Pa. 610, 614, 187 A.2d 575." (Emphasis original.)
*Commonwealth v. Reick Investment Corp.*, 419 Pa. at 60, 61, 213 A.2d at 282.

As our prior discussion has indicated, the Code has cured the taxing inequity recognized in *Reick*. Apportion-

ment and allocation for determining a foreign corporation's taxable base for its franchise tax as well as corporate net income tax are now governed by the *same* formulas and conditions precedent to their utilization under Article IV of the Code. The express language of the Code now requires that a foreign corporation be transacting business within and without the Commonwealth and have income from that activity taxable by another state before it may apportion the value of its capital stock. As Appellant has failed to satisfy the latter condition, apportionment was not available to it in determining its franchise tax.

Consistent with the foregoing, we enter the following

### ORDER

AND NOW, July 22, 1975, the appeal of Greenville Steel Car Company from the refusal of the Board of Finance and Revenue to resettle its domestic capital stock tax is dismissed; unless exceptions are filed within thirty (30) days of this order, the Prothonotary shall enter judgment in favor of the Commonwealth and against Greenville Steel Car Company, in the amount of $86,355.75 for capital stock tax liability for the year ending December 31, 1971, and mark the same satisfied, said liability having been paid.

President Judge BOWMAN and Judge MENCER dissent.