## Commonwealth of Pennsylvania *v.* After Six, Inc., Appellant.

Argued December 6, 1977, before President Judge BOWMAN and Judges CRUMLISH, JR., WILKINSON, JR., ROGERS, BLATT and DISALLE.

*William P. Thorn,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellant.

*Vincent J. Dopko,* Deputy Attorney General, for appellee.

OPINION BY JUDGE ROGERS, February 3, 1978:

Both After Six, Inc., a domestic corporation, and the Commonwealth of Pennsylvania have appealed a resettlement by the Board of Finance and Revenue of After Six's capital stock tax for its fiscal year ending June 30, 1972.

The number and complexity of the statutes governing the imposition of the capital stock tax suggest a preliminary discussion of these provisions. By Section 602(a) of the Tax Reform Code of 1971 (Tax Reform Code),[1] 72 P.S. §7602(a), a tax at the rate of 10 mills is imposed upon the *taxable value* of all capital stock of a domestic corporation.[2] The computations required to reach taxable value begin with a determination of *actual value*, reached by a consideration of the indicia of actual value described in Section 601 of the Tax Reform Code, 72 P.S. §7601, as follows:

[F]irst, the average which said stock sold for during the year; and second, the price or value

---

[1] Act of May 4, 1971, P.L. 6, *as amended.*

[2] Section 602(a) of the Tax Reform Code provides that the 10 mill tax rate is imposed upon the *"actual value* of [a corporation's] capital stock as ascertained by Section 601. . . ." (Emphasis added.) This statement is factually correct only where there are no exempt assets and no election is made by the corporation to have its capital stock computed pursuant to Section 602(b). Where there are exempt assets and no Section 602(b) election is made, the 10 mill tax is not applied against the *actual stock value* of Section 601 but rather against a *taxable value* determined by applying the single factor, asset apportionment formula specified in the Act of June 22, 1931, P.L. 685, *as amended,* 72 P.S. §1896. *See Commonwealth v. Gulf Oil Corp.,* 359 Pa. 583, 60 A.2d 46 (1948). *See also, J. L. Mott Corp. v. Board of Finance and Revenue,* 12 Pa. Commonwealth Ct. 493, 316 A.2d 921, *aff'd* 463 Pa. 539, 345 A.2d 650 (1975). Where a Section 602(b) election is made, computation by use of the three factor apportionment formula is always required. *See Greenville Steel Car Co. v. Commonwealth,* 20 Pa. Commonwealth Ct. 385, 343 A.2d 79 (1975), *aff'd* 469 Pa. 444, 366 A.2d 569 (1976).

indicated or measured by net earnings or by the amount of profit made and either declared in dividends, expended in betterments, or carried into the surplus or sinking fund; and third, the actual value indicated or measured by consideration of the intrinsic value of its tangible property and assets, and of the value of its good will and franchises and privileges, as indicated by the material results of their exercise, taking also into consideration the amount of its indebtedness.

*See also, Spang Stores, Inc. v. Commonwealth,* 468 Pa. 63, 360 A.2d 180 (1976) (dealing with an essentially identical capital stock valuation provision under Section 20 of the Act of June 1, 1889, P.L. 420, *as amended,* 72 P.S. §§1901, 1902. The Act of June 1, 1889 has been repealed; replaced by the Tax Reform Code of 1971).

Taxable value is determined by applying one of two apportionment formulas against actual value so ascertained. The Act of June 22, 1931, P.L. 685, 72 P.S. §1896,[3] provides for what is commonly referred to as a single factor apportionment formula employing only an asset fraction expressed as follows:

---

[3] The Act of June 22, 1931, which has not been repealed by the Tax Reform Code, provides that:

*Whenever any corporation,* joint-stock association, limited partnership, or company, subject to tax upon its capital stock imposed by and under the laws of this Commonwealth, *owns assets which are exempted or relieved from the capital stock tax under the laws of this Commonwealth, the proportion of the capital stock exempted or relieved from the capital stock tax, by reason of the ownership of such assets, shall be the proportion which the value of such assets bears to the value of the total assets owned by such corporation, joint-stock association, limited partnership, or company.* (Emphasis added.)

$$\text{(a)} \quad \frac{\text{taxable assets (total assets less exempt assets)}[4]}{\text{total assets}} = \text{apportionment factor}$$

$$\text{(b)} \quad \text{apportionment factor x actual value} = \text{taxable value x 10 mills} = \text{tax due.}$$

However, Section 602(a) of the Tax Reform Code gives domestic corporations an election to compute their capital stock tax in accordance with Section 602 (b) of the Tax Reform Code.[5] Section 602(b) imposes a franchise tax on foreign corporations measured by the taxable value of their capital stock.[6] Incorporated by reference into Section 602(b) for use in computing

---

[4] Both this Court and the Supreme Court of Pennsylvania have described this single factor formula as being a *"tangible assets fraction."* See *Commonwealth v. Greenville Steel Car Co.*, 469 Pa. 444, 448, 366 A.2d 569, 571 (1976) ; *J. L. Mott Corp. v. Board of Finance and Revenue*, 12 Pa. Commonwealth Ct. 493, 500, 316 A.2d 921, 924 (1974). This reference, however, is somewhat misleading for, unlike the *tangible asset fraction* in the three factor formula, the asset fraction in the single factor formula concerns itself with all assets, tangible and intangible. See *Commonwealth v. Gulf Oil Corp.*, 359 Pa. 583, 60 A.2d 46 (1948). The denominator of this fraction is comprised of total assets and the numerator is reduced by exempt assets which may or may not be intangible in nature.

[5] Section 602(b) provides, *inter alia*, that:

(b) Every foreign corporation, joint-stock association, limited partnership, and company whatsoever, from which a report is required under section 601 hereof, shall be subject to and pay into the treasury of the Commonwealth annually, through the Department of Revenue, a franchise tax at the rate of ten mills for the calendar year 1971 and the fiscal year beginning in 1971 and each year thereafter, *upon a taxable value to be determined* in the following manner. *The actual value of its whole capital stock of all kinds, including common, special, and preferred, shall be ascertained in the manner prescribed in section 601 of this article.* The taxable value shall then be determined by employing the relevant apportionment factors set forth in Article IV. . . . (Emphasis added.)

[6] The rate is again 10 mills times taxable value. A franchise tax is theoretically a tax on a foreign corporation's privilege of doing business in Pennsylvania not a tax on its capital stock. Capital

taxable value of the capital stock of foreign corporations are the three factors—property, payroll and sales—used in computing the apportionment factor used in turn in the computation of corporate net income tax due under Article IV of the Tax Reform Code. The apportionment factor so computed is required by Section 602(b) to be applied to the actual value of the foreign corporation's capital stock in order to arrive at its taxable value. These factors, which appear at Subsection (a)9-18 of Section 401(3)2 of the Tax Reform Code, 72 P.S. §7401(3)2.(a)(9)-(18), are graphically as follows:

(a) $\dfrac{\text{Average value of tangible property in Pa.}}{\text{Average value of tangible property everywhere}} = \% (1)$

(b) $\dfrac{\text{Wages, salaries, etc. assignable to Pa.}}{\text{Total wages, salaries, etc. everywhere}} = \% (2)$

(c) $\dfrac{\text{Sales assignable to Pa.}}{\text{Total Sales everywhere}} = \% (3)$

(d) $\dfrac{\% (1) + \% (2) + \% (3)}{3} = \text{Apportionment factor}$

(e) Apportionment factor x Actual value = Taxable value

(f) Taxable value x 10 mills = Tax due.

After Six and the Commonwealth have stipulated the facts which are binding upon this Court as well as the parties. *Greenville Steel Car Co. v. Commonwealth*, 20 Pa. Commonwealth Ct. 385, 343 A.2d 79 (1975), *aff'd* 469 Pa. 444, 366 A.2d 569 (1976). After Six manufactures men's formal clothing. It owns all of the issued and outstanding capital stock of eleven subsidiaries. Six of these subsidiaries are Pennsylvania corporations which during After Six's fiscal year paid Pennsylvania Capital Stock Tax on an ac-

stock value is the means by which the franchise tax is measured. *Commonwealth v. Monessen Amusement Co., Inc.*, 352 Pa. 120, 42 A.2d 158 (1945); *Commonwealth v. Ford Motor Co.*, 350 Pa. 236, 38 A.2d 329 (1944); *Commonwealth v. Columbia Gas and Electric Corp.*, 336 Pa. 209, 8 A.2d 404 (1939).

tual value of their stock of $4,220,000. The remaining five are foreign subsidiaries with assets located entirely outside the Commonwealth and whose capital stock has an agreed actual value of $4,700,000.

In computing its capital stock tax for its fiscal year ending June 3, 1972, After Six elected to use the optional method authorized by Section 602(a) and described in Section 602(b). It reported the actual value of its capital stock as $12,300,834. From this figure it deducted $8,700,000 as the claimed actual value of the capital stock of its subsidiaries,[7] leaving a balance of $3,600,000. Using the three factor apportionment method, it calculated its apportionment factor to be .784401. It then multiplied the asserted actual value of its capital stock ($3,600,000) by the apportionment factor to arrive at a taxable value of $2,823,844.00 which, multiplied by 10 mills, produced a capital stock tax liability of $28,238.44.

The Departments of Revenue and Auditor General rejected After Six's report and settled the tax at $78,-525.80. This amount of tax was arrived at by reappraising the actual value of After Six's capital stock value at $10,000,000; by disallowing any exemption for the capital stock of the eleven subsidiaries; and by multiplying the $10,000,000 actual value by an apportionment factor slightly greater than the taxpayer's (.785258), to arrive at a taxable value of $7,852,580, which multiplied by 10 mills produced capital stock tax $78,525.80. On After Six's petition for resettlement, the Departments of Revenue and Auditor General audited After Six's records and made a substantial change in the apportionment factor (.873420) to resettle the tax at $87,342.00.

---

[7] The subsequently stipulated values of the 11 subsidiaries ($4,220,000 + $4,700,000 = $8,920,000) is slightly more than the value claimed by After Six on its initial capital stock tax return ($8,-700,000).

On After Six's appeal from the Departments of Revenue and Auditor General's determination, the Board of Finance and Revenue resettled After Six's capital stock tax at $75,605.02. The Board arrived at this figure by using the Department's figure for actual value of $10,000,000 and applying thereto the single factor formula of the Act of June 2, 1931, to arrive at taxable value and the $75,605.02 tax. Both After Six and the Commonwealth challenge this computation.[8] After Six says that its tax should be computed by deducting the stipulated value of the subsidiaries' stock of $8,920,000 from the actual value of its capital stock as established by the Commonwealth of $10,000,000 and by multiplying the resultant $1,-080,000 by the Department's apportionment factor of .873420 to produce a taxable value of $943,293.60 which, at the ten mill rate, yields a capital stock tax of $9,-432.94.[9] The Commonwealth argues that After Six is not entitled to any exemption for stock in its subsidiaries under the three factor apportionment formula of Article IV of the Tax Reform Code; it also contends that the Board of Finance and Revenue erred in re-

[8] The Commonwealth's challenge to the Board's action is made pursuant to Section 1104(e) of The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended*, 72 P.S. §1104(e), which states:

(e) The Commonwealth may raise any question on appeal, although no appeal has been filed by it, and may introduce any facts in support of its settlement or correction thereof, provided notice of twenty (20) days is given the appellant prior to trial of the intention of raising such new questions or presenting new facts.

[9] The $9,432.94 tax thus computed is less than the tax computed by After Six on its tax return ($28,238.44) because the actual stock value of the Commonwealth ($10,000,000) is lower than the actual stock value reported by After Six ($12,300,834). After Six, of course, agrees with the lower valuation because, under the calculations urged by After Six, its use produces a lower tax even after the application of the higher apportionment factor established by the Department of Revenue on resettlement.

computing After Six's capital stock tax by the use of the single factor apportionment formula after the taxpayer had elected the alternate three factor formula. We agree with both of the Commonwealth's assertions.

The Act of April 20, 1927, P.L. 311, *as amended*, 72 P.S. §1894, provides:

> Whenever any corporation . . . incorporated or formed under the laws of this Commonwealth, and liable to the payment of tax upon its capital stock, or specifically exempted therefrom under the laws of this Commonwealth, shall own, either directly or through subsidiary or sub-subsidiary corporations, a majority of the total issued and outstanding shares of voting stock of any corporation, . . . then, in such cases, so much of the value of all shares of stock, so owned in such other corporation . . . *as represents the property or assets located or having a legal situs without this Commonwealth,* shall not be liable to taxation, under the laws of this Commonwealth providing for the taxation of capital stock of corporations . . . but shall be excluded in determining the value of the capital stock of such owning company for purposes of taxation. (Emphasis added.)

There is also a judicially established exemption, based on the presumption against double taxation, for stock a domestic corporation owns in other corporations which are subject to the Pennsylvania capital stock tax regardless of where the assets of such other corporations are located. *Commonwealth v. Fall Brook Coal Co.,* 156 Pa. 488, 26 A. 1071 (1893). In *Commonwealth v. Fall Brook Coal Co., supra,* the Fall Brook Coal Co. owned 70% of the capital stock of the Fall Brook Railway Co. The Railway Co. was subject to and paid the Pennsylvania capital stock tax then imposed by the Acts of 1889 and 1891. The Commonwealth treated the 70% of the Railway Co. stock held by the Coal

Co. as taxable assets of the Coal Co. in computing its capital stock tax. The Supreme Court held that the Railway Co.'s stock, once subjected to a capital stock tax of its own, could not be taxed again in the hands of the Coal Co. because, for among other reasons,[10] the presumption against double taxation was left unrebutted by the Acts of 1889 and 1891. The Court there wrote that:

> It is clear . . . that to tax the capital stock in the hands of the corporation, and then tax the owners of the parts or shares into which it is divided, upon their respective holdings in the same capital, is double taxation pure and simple.
>
> . . . .
>
> [T]he legislature has power to impose double taxation, provided it is done in such manner as to secure the uniformity which the constitution requires. It cannot be done arbitrarily in a given case, but it may be done if the whole class to which the subject belongs is subjected to the burden in substantially the same manner. *But an intent to impose double taxation will not be presumed*: Fidelity Company v. Loughlin, 139 Pa. 612. *The presumption is against the existence of such an intention, and this presumption will prevail until it is overcome by express*

---

[10] The Court wrote:

What is now asked by the Commonwealth, and was actually done by the court below, is to assess the coal company as the holder of the stock of the railway company with the same sum already paid by that corporation upon the same capital stock, to wit, $11,083.33. This cannot be done, as we have already seen, for two very satisfactory reasons: (1) It would be a clear case of double taxation . . . and in the face of the legal presumption that no such intention exists. (2) It is in flat violation of the [Acts of 1889 and 1891] under which these corporations are made taxable.

*Commonwealth v. Fall Brook Coal Co., supra*, 156 Pa. at 498-99, 26 A. at 1073.

*words showing an intent to impose double taxation.* (Emphasis added.)

*Commonwealth v. Fall Brook Coal Co., supra,* 156 Pa. at 495, 26 A. at 1071-72.

The Commonwealth does not contest that After Six's stock in its foreign subsidiaries qualifies for the Act of 1927 exemption and that its domestic subsidiary stock falls within the ambit of the judicial exemption of *Fall Brook Coal Co., supra.* The Commonwealth, however, says that these exemptions are available only through the single factor apportionment formula found in the Act of 1931 and were lost to After Six upon making its three factor formula election.

After Six argues that the Act of 1927 exemption, by its terms, extends to any domestic corporation and that nothing in Section 602(a) of the Tax Reform Code suggests that the exemption is not to be had where the three factor formula is elected. It contends that the *Fall Brook Coal Co., supra,* exemption is available where the three factor formula election is made because the Tax Reform Code contains no language establishing a legislative intent to permit a second taxation of the capital stock of its domestic subsidiaries. Thus After Six claims it may deduct the value of its subsidiaries' stock from the actual value of its own capital stock before applying the three factor formula.

After Six's arguments are without merit. It is clear that under the single factor formula of the Act of 1931, any exemptions for nontaxable assets are to be realized by subtracting their value from total assets in the numerator of the fraction and not by deducting the value of the exemption from actual value of the capital stock.[11]  *See Commonwealth v. Gulf Oil Corp.,* 359 Pa. 583, 60 A.2d 46 (1948).

---

[11] *See* Note 2. The radical results produced by deducting exempt assets from actual value may be readily observed in the facts of the instant case. After Six's actual stock value is $10,000,000. The

The election provision of Section 602(a) provides that:

> [A]ny domestic corporation . . . subject to the [capital stock tax] may elect to compute and pay its tax *under and in accordance with the provisions* of subsection (b) of this section 602 [relating to the imposition and calculation of the franchise tax on foreign corporations]. . . . (Emphasis added.)

As previously stated, Section 602(b) incorporates the three factor formula of Article IV of the Tax Reform Code. The Supreme Court of Pennsylvania has stated that:

> As applied to a domestic corporation electing to be treated as a foreign corporation the use of the three factor apportionment formula is a legislative grant by which the taxpayer can reduce its tax liability. Use of the formula is in the nature of an exemption or deduction and, as such, must be strictly construed.

*Commonwealth v. Greenville Steel Car Co.,* 469 Pa. 444, 451, 366 A.2d 569, 573 (1976).

It is thus apparent that if After Six is to be permitted an exemption for its subsidiaries' stock, it must be authorized by the three factor formula. Since After Six obviously cannot claim an exemption for its subsidiaries' stock by way of the sales and salary factors of said formula, we look solely to the property factor found in Article IV, Section 401(3)2.(a)(10), 72 P.S. §7401(3)2.(a)(10), which provides that:

---

value of the stock of its subsidiaries is $8,920,000. The value of its total assets is $35,388,797. Using the single factor formula, roughly ¼, or $2,500,000 of the actual value would not be taxed as being attributable to the exempt subsidiary stock. Deducting the exempt assets directly from actual value, however, would in fact leave less than ¼ of actual value ($1,080,000) subject to the tax. Such a computation clearly does not reflect that proportion of assets which are taxable.

(10) The property factor is a fraction, the numerator of which is the average value of the taxpayer's *real and tangible personal property* owned or rented and used in this State during the tax period and the denominator of which is the average value of all of the taxpayer's *real and tangible personal property* owned or rented and used during the tax period. (Emphasis added.)

The numerator and denominator of the property factor fraction of the three factor formula, as above underscored, include only tangible personal property and are not concerned with intangibles, including capital stock of subsidiaries. After Six having elected to compute its tax under the Article IV formula is not therefore entitled to any exception. To the extent that double taxation may result from refusing an exemption for stock held by After Six in its domestic subsidiaries, *Fall Brook Coal Co., supra,* offers no relief because the language of Article IV, Section 401(3)2.(a)(10) by unavoidable implication negates any presumption against double taxation.

Finally, we agree with the Commonwealth that the Board erred in computing After Six's capital stock tax by a single factor apportionment formula. Section 602(a) of the Tax Reform Code provides the privilege of choosing between the single or three factor formula to the taxpayer, not to the Board. After Six having elected to use the three factor formula must, for the taxable year of the election, bear the consequences of its decision whether they be favorable or adverse.

The sole remaining issue is whether After Six should pay the amount of $78,525.80 computed as tax by the Department of Revenue or the $87,342.00 resettlement figure of the Departments of Revenue and Auditor General. Stipulation of fact No. 9 entered into by the parties states that if relevant, the .873420

apportionment factor should be the one applied. This apportionment factor multiplied by the actual value of After Six's capital stock in the amout of $10,000,000 produces a taxable value of $8,734,200 and a tax of $87,342.00.

We therefore enter the following

ORDER

AND Now, this 3rd day of February, 1978, the petition for review of After Six, Inc. from the decision of the Board of Finance and Revenue in making resettlement of After Six, Inc.'s capital stock tax for the fiscal year ending June 30, 1972 is dismissed. The Commonwealth's challenge of the same decision is upheld. Unless exceptions hereto are filed within THIRTY (30) DAYS of the filing of this Order, as provided by law, judgment is hereby directed to be entered in favor of the Commonwealth in the amount of $87,342.00 with interest at the statutory rate of six percent (6%) per annum from the date said capital stock tax was originally due.