Fry Communications, Inc., Petitioner *v.* Commonwealth of Pennsylvania, Respondent.

Argued April 7, 1981, before President Judge
CRUMLISH and Judges MENCER, ROGERS, CRAIG and
PALLADINO. Judges BLATT, WILLIAMS, JR. and MAC-
PHAIL did not participate.

*John M. Eakin,* for petitioner.

*Robert Patrick Coyne,* Deputy Attorney General,
for respondent.

OPINION BY JUDGE MENCER, August 14, 1981:

Fry Communications, Inc. (petitioner) has ap-
pealed from an order of the Board of Finance and
Revenue (Board) which upheld a decision of the
Auditor General denying an exemption from capital
stock taxation for certain assets of the petitioner. We
affirm.

All of the facts have been stipulated by the parties.
We adopt them as our findings of fact and shall dis-
cuss those facts which, in our judgment, are essential
to the disposition of this appeal.

The petitioner operates a commercial printing bus-
iness in Mechanicsburg, Pennsylvania. It is required

by Section 602(a) of the Tax Reform Code of 1971 (Code)[1] to pay a capital stock tax on its capital stock of all kinds except that which is "invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development within the State."

During the 1975 tax year, the petitioner accumulated some $700,000 which it invested in certificates of deposit. These certificates matured after the end of the 1975 tax year. They were treated as an exemption by the petitioner when it calculated its tax liability for the tax year at $196. The Auditor General disallowed the exemption and "settled" the petitioner's tax in the amount of $5,584.28. This appeal ultimately ensued.

The petitioner argues that it properly exempted the certificates in calculating its capital stock tax liability because the funds were later used to pay for an expansion of its physical plant, the purchase of three new printing presses, and the payment of federal income taxes. It is the petitioner's position that these items were all necessary to carrying on the printing business, and therefore the funds set aside to pay for them were also reasonably necessary to carry on business and should be exempted from taxation. We are unpersuaded by the petitioner's arguments.

In previous cases of this type, we have relied on the decision in *Commonwealth v. Prudential Industries, Inc.,* 80 Dauph. 381 (1963).

> We have held that the following assets of a manufacturing corporation did not qualify for the manufacturing exemption: bank accounts greater than are reasonably necessary to carry on the manufacturing business, Commonwealth v. The Curtis Publishing Company, 15 Dauphin 122 (1912) affirmed in 237 Pa. 333 [85 A. 360];

[1] Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7602(a).

Commonwealth v. Apex Hosiery Company, 40 Dauphin 399 (1935); cash surrender value of life insurance policies taken out by a corporation on the life of its President, Commonwealth v. Steel Heddle Manufacturing Company, 41 Dauphin 315 (1935); accummulation of a supply of raw material far beyond the needs for manufacturing purposes within the limits of the tax year, Commonwealth v. The Custer City Chemical Company, 16 Dauphin 46 (1913); Commonwealth v. New York and Pennsylvania Co., 16 Dauphin 51 (1913); covenant bonds of another domestic corporation held by a manufacturing corporation, Commonwealth v. Jarecki Manufacturing Company, 204 Pa. 36 [53 A. 517] (1902) reversing 5 Dauphin 154; funds not needed in a manufacturing company, which have been temporarily withdrawn from use with the expectation of employing the funds at some future time when it may determine to expand its trade, Commonwealth v. Nagle Engine and Boiler Works, 23 Dauphin 235 (1920).

A similar situation can be found in the line of cases in which the taxpayer claimed exemption for the dwelling houses owned and rented by it. These cases include Commonwealth v. Mahoning Rolling Mill Company, 5 Pa. C.C. Rep. 95 [5 Dauph. 58] (1888); Commonwealth v. Salt Manufacturing Company, 1 Dauphin 97 (1897); Commonwealth v. Westinghouse Air Brake Company, 151 Pa. 276 [24 A. 1111] (1892) and Commonwealth v. Keasbey and Mattison Company, 43 Dauphin 71 (1936). The general ruling of these cases is that the dwelling houses are exempt if necessary to the manufacturing operations of the one claiming the exemption. However, if the necessity for their erection is

brought about by the action of the taxpayer itself, the exemption will not be granted.

*Id.* at 385-86, quoted with approval in *Jubilee Knitting Mills, Inc. v. Board of Finance & Revenue,* 9 Pa. Commonwealth Ct. 602, 606-07, 309 A.2d 161, 163-64 (1973), *aff'd per curiam* 461 Pa. 463, 336 A.2d 879 (1975). Following the same analysis, we conclude that the Board properly denied an exemption for the $700,000 in certificates of deposit in the present case.

The petitioner cites *Commonwealth v. Curtis Publishing Co.,* 237 Pa. 333, 85 A. 360 (1912), for the proposition that the bank accounts of a manufacturing company are *presumed* to be necessary to carry on business. This reading of *Curtis* is much too broad. In *Curtis,* the Supreme Court was dealing with the denial of an exemption for funds held in a bank account for the purposes of carrying on the day-to-day business of the taxpayer by maintaining an adequate cash flow. The Court held that such funds would be exempted from capital stock tax "[i]f the amount is no more than reasonably necessary, and the deposit is strictly incident to and employed in the business." *Id.* at 337, 85 A. at 362. The Court also said that "[t]here is no suggestion by the Commonwealth that the sum of $50,000 in the present case is in excess of the business needs of the defendant." *Id.* We do not read this statement as creating a legal *presumption,* however, that *any* amount held in the bank is "actually and exclusively employed in carrying on manufacturing, processing, research or development within the State." 72 P.S. §7602(a).

In the case presently before us, the petitioner's certificates of deposit were not used to maintain a day-to-day cash flow essential for conducting business. Rather, they were invested for a set period of time for the purpose of earning interest income. Therefore, the petitioner's reliance on *Curtis* is misplaced. Further-

more, the certificates were not encumbered for a specific purpose, and the funds were not used *during the taxable period* for any purpose directly related to its manufacturing business. Indeed, at the time the tax liability was incurred, there was no indication that the funds would *ever* be used for an exempt purpose.

The present case is analogous to *Commonwealth v. After Six, Inc.*, 33 Pa. Commonwealth Ct. 472, 382 A.2d 983 (1978), where we held that a corporate taxpayer who elected to utilize a certain method of computing the amount of its tax was bound by that election even though it later proved to be unwise. The petitioner here made a business decision concerning the use of $700,000. It could have used these funds to make capital investments which would have resulted in an exemption from the capital stock tax, or it could have used part of the funds to reduce its federal income tax liability for the 1975 tax year. Instead, it elected to purchase certificates of deposit for a set period of time to earn interest. Thus, the petitioner elected a course of action which would provide an increase in income against a decrease in capital tax.

It is immaterial that the $700,000 was later used to pay certain contractual obligations to purchase exempt property. Funds *expressly* set aside for future expansion are not exempt from taxation. *Commonwealth v. Nagle Engine & Boiler Works*, 23 Dauph. 235 (1920). We find even less reason to grant an exemption where, as here, the funds are *not* expressly set aside for future expansion but are merely on deposit at a time when the taxpayer has a concurrent obligation to pay for certain capital improvements. Clearly, the funds could have been held on deposit indefinitely while the petitioner satisfied its obligations by other means. In that case, the satisfaction of the obligations might have created a liability which could collaterally affect the calculation of capital stock tax, but the

funds on deposit would have been exempted from taxation.

In essence, the petitioner is asking this Court to grant a tax exemption because the petitioner is now dissatisfied with the consequences of a prior business decision. The Code does not recognize such an exemption, and we are loathe to create one.

## Conclusions of Law

1. Fry Communications, Inc., a Pennsylvania corporation, is subject to capital stock tax under Section 602(a) of the Tax Reform Code of 1971, Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §7602(a).

2. The sum of $700,000 invested by Fry Communications, Inc., in certificates of deposit during the tax year ending January 2, 1976, was not actually and exclusively employed in carrying on manufacturing, processing, research or development.

3. Fry Communications, Inc., could not properly claim that the sum of $700,000 invested in certificates of deposit during the tax year ending January 2, 1976 was exempt from capital stock taxation for that tax year.

4. The Commonwealth of Pennsylvania properly settled the 1975 capital stock tax liability of Fry Communications, Inc., at $5,584.28.

5. Judgment should be entered in favor of the Commonwealth of Pennsylvania and against Fry Communications, Inc., in the amount of $5,584.28.

## Decree Nisi

And Now, this 14th day of August, 1981, the appeal of Fry Communications, Inc., is hereby dismissed, and judgment is directed to be entered in favor of the Commonwealth of Pennsylvania and against Fry Communications, Inc., in the amount of $5,584.28, together

with interest and costs, according to law, unless exceptions be filed hereto within 30 days. The Prothonotary is directed to notify forthwith the parties hereto or their counsel of this decree nisi.